RLC:SLT
F.# 2010R01882

**M-10-1172**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DERRICK BROWN,
    also known as "Mouthy,"
    "Chris" and "Solo,"
ANDRE WILSON,
    also known as "Mario,"
KERRY GUNTER,
LATOYA MANNING,
DONOVAN DOWNER,
CONSTANTINE BRANCH,
FABIAN MANNING,
KAREEM FOREST,
RYAN ANDERSON,
KAREEM REID,
JOSEPH DONALDSON,
LEON SCARLETT,
CHRISTOPHER THOMSPON,
CHARLES JONES,
KEVIN LEE,
LEEMAX NEUNIE,
    also known as "Jukes,"
KWAUME WILSON and
VINCENT QUINONES,

        Defendants.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(T. 21, U.S.C., §§ 846
and 841(b)(1)(B)(vii))

EASTERN DISTRICT OF NEW YORK, SS:

        JOELLE ANDO, being duly sworn, deposes and states that she is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

1

Upon information and belief, on or about and between January 1, 2010 and October 7, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DERRICK BROWN, also known as "Mouthy," "Chris" and "Solo," ANDRE WILSON, also known as "Mario," KERRY GUNTER, LATOYA MANNING, DONOVAN DOWNER, CONSTANTINE BRANCH, FABIAN MANNING, KAREEM FOREST, RYAN ANDERSON, KAREEM REID, JOSEPH DONALDSON, LEON SCARLETT, CHRISTOPHER THOMSPON, CHARLES JONES, KEVIN LEE, LEEMAX NEUNIE, also known as "Jukes," KWAUME WILSON and VINCENT QUINONES, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 100 kilograms or more of a substance containing marijuana, in violation of Title 21, United States Code, 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(B)(vii))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the DEA, duly appointed according to law and acting as such. I have been a DEA Agent for

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

approximately one and a half years and am currently assigned to the New York Field Division Drug Enforcement Task Force, where I am tasked with investigating narcotics trafficking, money laundering and other offenses. During my tenure with the DEA, I have participated in numerous narcotics and money laundering investigations.

2.  For approximately one year, the DEA, United States Postal Service ("USPS") and various local law enforcement agencies have been investigating a drug distribution organization based in Queens, New York, led by defendant DERRICK BROWN, also known as "Mouthy," "Chris" and "Solo." Members of the organization mail packages containing marijuana from Arizona and California to the Eastern District of New York, where the marijuana is sold by street level distributors. The marijuana is generally packaged inside large brown cardboard boxes, approximately 18 x 18 x 18 inches, filled with styrofoam peanuts. These packages are then sent through the mail using the United States Postal Service ("USPS"). Once the packages containing marijuana arrive in the Eastern District of New York, the marijuana is removed from the boxes and stored in various stash houses from where it is distributed throughout the metropolitan New York area. Members of the organization then either mail, electronically transfer, or have couriers transport the proceeds

3

from the sale of this marijuana from the Eastern District of New York to the sources of supply in California and Arizona.

3. During the course of the investigation, law enforcement officers have identified ANDRE WILSON, also known as "Mario," KERRY GUNTER, LATOYA MANNING, DONOVAN DOWNER, CONSTANTINE BRANCH, FABIAN MANNING, KAREEM FOREST, RYAN ANDERSON, KAREEM REID, JOSEPH DONALDSON, LEON SCARLETT, CHRISTOPHER THOMSPON, CHARLES JONES, KEVIN LEE, LEEMAX NEUNIE, also known as "Jukes," KUAME WILSON and VINCENT QUINONES as members of BROWNS's distribution organization.

4. In January 2010, Postal Inspectors intercepted two large brown cardboard boxes that were shipped from members of the organization in Arizona to two mailbox drop locations in Queens used by ANDRE WILSON. Agents executed a search warrant on the boxes, which revealed approximately 40 pounds of marijuana.

5. In August 2010, DEA agents installed a pole camera on the public street outside a suspected stash house in South Ozone Park, Queens, which was identified as the home residence of DERRICK BROWN and his wife, LATOYA MANNING (the "BROWN Residence"). Both BROWN and MANNING were observed at the BROWN Residence on multiple occasions during the course of the investigation, including as recently as October 7, 2010, and at

4

least one of the utility accounts at the BROWN residence has been continuously registered to LATOYA MANNING since December 2009. During the course of the investigation, law enforcement agents, using both the pole camera and traditional methods of surveillance, have observed numerous individuals, including the defendants, enter and exit the BROWN Residence carrying brown cardboard boxes consistent with the type of boxes used by the organization to transport marijuana through the mail.

6. For example, on July 27, 2010, law enforcement officers conducting surveillance observed an unknown male ("UM-1") sitting on the front steps of the BROWN Residence. Every few minutes, agents observed UM-1 walk out of the front yard and down the block, where he would look up and down the street and into the interiors of cars parked on the street. At approximately 12:50 p.m., a silver-colored Chrysler 300 with New York License Plate Number FCH-4318 arrived in the vicinity of the BROWN Residence, and parked across the street from the BROWN Residence. ANDRE WILSON got out of the car, approached UM-1 and had a brief conversation. UM-1 made a telephone call, after which he motioned to ANDRE WILSON to wait outside the gate to the BROWN Residence. At approximately 1:15 p.m., another unknown male ("UM-3") walked out of the backyard of the BROWN Residence and had a brief conversation with ANDRE WILSON. After the

5

conversation with UM-3, ANDRE WILSON got into the car and backed it into the driveway of the BROWN Residence. ANDRE WILSON remained in the car, while UM-3 opened the trunk of the car and removed a large brown cardboard box, which he then took to the back of the BROWN Residence. Agents observed that the size and appearance of the cardboard box removed from ANDRE WILSON's car was consistent with the intercepted packages discussed above in ¶ 3, and that the box had a neon green and white USPS "Delivery Confirmation" label on it. While the package was being unloaded from ANDRE WILSON's car by UM-3, UM-1 stood at the foot of the driveway of the BROWN Residence, maintaining watch on the roadway and sidewalk. Based on my training, experience and knowledge of the investigation that has been conducted thus far, I believe that the package removed from ANDRE WILSON's car by UM-3 contained marijuana, and that UM-1 was acting as a lookout while the marijuana was taken from the car to the BROWN Residence.

7. In particular, Between August 28, 2010 and September 30, 2010, law enforcement officers tracked 23 separate packages shipped by members of the organization to the same mail drop locations used by ANDRE WILSON. On each occasion that packages were delivered to the maildrop locations, video surveillance from the pole camera showed ANDRE WILSON delivering

the packages to the BROWN Residence. On many of these occasions, agents conducted physical surveillance on the maildrop facilities and observed ANDRE WILSON retrieve the packages, place them into the WILSON Escalade and then deliver them to the BROWN Residence, where they were unloaded by DERRICK BROWN and/or BROWN's workers. Based on the size and weight of the boxes and the amount of marijuana recovered from other boxes seized during the course of the investigation, I believe that each box contained approximately 20 pounds of marijuana. Thus, approximately 460 pounds of marijuana were delivered to the BROWN Residence in just the time period between August 28, 2010 and September 30, 2010.

8. In the course of the investigation, agents learned that the silver-colored Chrysler 300 with New York License Plate Number FCH-4318 which they had observed during their July 27, 2010 surveillance of the BROWN Residence, discussed above in ¶ 8, was a rental car rented by "Teena Walker" with a date of birth in January 1972 and an address in Rosedale, New York. Agents also learned that "Teena Walker" had a 2004 White Cadillac Escalade with New York License Plate Number FCM-4026 registered in her name ("the WILSON Escalade"). On August 31, 2010, law enforcement officers established surveillance in the vicinity of Teena Walker's residence in Rosedale, New York. A canvass of the neighborhood surrounding this address led to the discovery of the

7

WILSON Escalade, parked in the driveway of 259-64 148th Drive in Rosedale, New York, which was later identified as the home residence of ANDRE WILSON, KUAME WILSON, LEEMAX NEUNIE and VINCENT QUINONES ("the WILSON Stash House").

9. On August 30, 2010, several packages were delivered to the maildrop locations used by ANDRE WILSON. Video surveillance from the pole camera revealed that ANDRE WILSON delivered the packages to the BROWN residence the same day. On September 2, 2010, law enforcement agents conducted another search of trash placed out for collection in front of the BROWN Residence. Agents detected a strong odor of marijuana emanating from a black plastic bag, which also contained what appeared to be marijuana. Agents also observed several plastic strips from vacuum-sealed foodsaver bags, as well as one whole plastic foodsaver bag and an envelope containing numerous rubberbands. Based on my training and experience and the investigation that has been conducted thus far, I know that drug dealers often use vacuum or heat sealed bags to package drugs. Notably, on September 7, 2010, "Taz," a trained NYPD narcotics canine, gave a positive alert to the trash recovered from the BROWN Residence on

September 2, 2010, indicating that the trash contained a controlled substance or the residue of a controlled substance.[2]

10. On September 20, 2010, at approximately 1:00 p.m., law enforcement officers conducting surveillance of the BROWN Residence observed ANDRE WILSON, who was driving the WILSON Escalade, park on the street in front of the BROWN Residence. Agents observed ANDRE WILSON exit the vehicle carrying a weighted black plastic bag, which ANDRE WILSON retrieved from the rear driver's side seat of the WILSON Escalade. Another unknown male ("UM-5") approached the passenger side of the vehicle and retrieved a large brown cardboard box from the rear passenger seat of the WILSON Escalade. ANDRE WILSON and UM-5 entered the BROWN Residence with the black plastic bag and brown cardboard box, respectively. A few minutes later, ANDRE WILSON emerged from the BROWN Residence without either the black plastic bag or the brown cardboard box. ANDRE WILSON got into the driver's side

---

[2] I am informed by "Taz's" handler, an NYPD Detective, that "Taz" was acquired by the NYPD in 2008 after having completed a basic course of instruction in detection of controlled substances at the NYPD K-9 Training Academy. Since that time, "Taz" has regularly served the NYPD as a K-9 Narcotics Detecting Dog, receives continuous training, and is utilized regularly for the purpose of detecting controlled substance odors. I am further informed that "Taz" is routinely used to conduct searches of automobiles, packages, and suitcases. "Taz" has made positive indications on narcotics in the field, including marijuana, cocaine, heroin, ecstasy, methamphetamine, and their derivatives. "Taz" alerts after detecting the scent of controlled substances, and her alert consists of biting and scratching.

9

of the white Cadillac and drove away. Agents observed that the size and appearance of the brown cardboard box removed from the WILSON Escalade, were consistent with the intercepted packages found to contain marijuana. Based on my training and experience and the investigation that has been conducted thus far, I believe that both the cardboard box and the plastic bag removed from the white Cadillac ANDRE WILSON was driving and taken into the BROWN Residence contained marijuana.

11. On September 22, 2010, at approximately 5:30 p.m., law enforcement officers conducting surveillance again observed the white Cadillac Escalade driven by ANDRE WILSON, the WILSON Escalade, back into the driveway of the BROWN Residence, out of sight. Agents also observed an unknown male ("UM-6") standing guard at the foot of the driveway of the BROWN Residence. At approximately 6:29 p.m., another unknown male ("UM-7"), brought six large black garbage bags and a stack of flattened cardboard boxes to the curb of the BROWN Residence. Based on my observations and the manner in which they were carried by UM-7, two of the six garbage bags appeared to be especially light. Based on my training and experience and the investigation that has been conducted thus far, I believe that these two garbage bags likely contained packing materials, specifically the

10

styrofoam peanuts agents observed in the previously intercepted packages containing marijuana, discussed above. I also believe that the stack of flattened cardboard boxes were from packages containing marijuana. At approximately 7:00 p.m., agents observed the white Cadillac, The WILSON Escalade, drive away from The BROWN Residence. Based on my training and experience and the investigation that has been conducted thus far, I believe that packages containing marijuana were unloaded from the WILSON Escalade and taken into the BROWN Residence.

12. On the following day, September 23, 2010, law enforcement agents conducted another search of trash placed out for collection in front of the BROWN Residence. Agents observed four large black plastic garbage bags. Notably, the two lighter bags described above in ¶ 11, as well as the stack of cardboard boxes, were no longer in front of the BROWN Residence for trash collection. Based on my training and experience and the investigation that has been conducted thus far, I believe that these two lighter garbage bags and the stack of cardboard boxes were drug packing materials which were removed to another location for more discreet disposal. While conducting an inspection of the trash collected from the BROWN Residence, agents detected a strong odor of marijuana emanating from some of the garbage bags and collected what appeared to be small amounts

11

marijuana from the bags. Agents also observed styrofoam peanuts and plastic baggies in the garbage bags. A field-test of the substance recovered from the garbage bags confirmed that the substance was positive for the presence of marijuana.

13. On September 23, 2010, at approximately 7:00 p.m., law enforcement officers conducting surveillance again observed the WILSON Escalade, back into the driveway of The BROWN Residence. ANDRE WILSON and two unknown males ("UM-8" and "UM-9") removed two large brown cardboard boxes from the trunk area of the white Cadillac and took them into the BROWN Residence. Another unknown male ("UM-10"), opened the rear passenger side door of the white Cadillac and removed another large brown cardboard box, which he took into the BROWN Residence. Another unknown male ("UM-11"), then placed a large white garbage bag into the trunk area of the white Cadillac, which then drove away from the BROWN Residence. Agents observed that the size and appearance of the packages removed from the white Cadillac were consistent with the intercepted packages discussed above. Based on my training and experience and the investigation that has been conducted thus far, I believe that the three brown cardboard boxes removed from the white Cadillac contained marijuana. I also believe that the large white garbage bag that was placed

12

into the trunk area of the WILSON Escalade, contained packing materials, used in the shipping of the marijuana, for disposal.

14. On September 30, 2010, agents conducted surveillance of ANDRE WILSON and observed WILSON drive the WILSON Escalade to the two mailbox drops in Flushing, Queens, retrieve several cardboard boxes, which he placed into the WILSON Escalade, and then deliver the boxes to the BROWN Residence. Agents observed that the size and appearance of the packages WILSON removed from the white Cadillac were consistent with the intercepted packages discussed above. Based on my training and experience and the investigation that has been conducted thus far, I believe that the brown cardboard boxes WILSON removed from the white Cadillac and brought into the BROWN Residence contained marijuana.

15. On or about October 7, 2010, Postal Inspectors identified nine packages that were shipped from Arizona to the same two mailbox drops used by ANDRE WILSON. Agents conducted surveillance of the mailbox drops and observed ANDRE WILSON arrive driving the WILSON Escalade. WILSON was followed closely behind by a Nissan Qwest minivan, which was driven by the defendant DERRICK BROWN. Agents observed WILSON retrieve a total of nine cardboard boxes from the two mailbox drops. Agents then followed WILSON and BROWN as they drove to the BROWN Residence

13

and unloaded the boxes into the BROWN Residence. Once the boxes were unloaded into the BROWN Residence, WILSON and BROWN left the vicinity. ANDRE WILSON was subsequently arrested several blocks away from the BROWN residence while driving the WILSON Escalade. DERRICK BROWN was arrested approximately two blocks away from the BROWN Residence while driving the Nissan Qwest minivan.

16. After observing WILSON and BROWN deliver the boxes of marijuana, agents executed a search warrant on the BROWN residence. The defendants KERRY GUNTER, LATOYA MANNING, DONOVAN DOWNER, CONSTANTINE BRANCH, FABIAN MANNING, KAREEM FOREST, RYAN ANDERSON and KAREEM REID were all present inside the house at the time of the search. The search revealed the nine cardboard boxes that WILSON and BROWN had previously brought into the BROWN Residence. Each of the boxes contained a green leafy substance that subsequently tested positive for marijuana. At least two of the boxes had been opened and bales of marijuana packaged into compressed brick-like objects had been removed from the boxes and placed on the kitchen counter. Agents also found a black garbage bag filled with marijuana elsewhere in the BROWN Residence, several heat-sealer machines, narcotics packaging materials consistent with the type found during the trash inspections discussed above, and a loaded semi-automatic .40 caliber pistol

14

that was found lying on the floor in the living room. A clear plastic bag containing marijuana and several thousand dollars in United States currency were also recovered from the bedroom shared by DERRICK BROWN and LATOYA MANNING. In total, agents recovered approximately 100 kilograms of marijuana from the BROWN residence.

17. Immediately after agents entered the BROWN residence to conduct the search, the defendants JOSEPH DONALDSON, LEON SCARLETT, CHRISTOPHER THOMPSON, CHARLES JONES and KEVIN LEE fled out the back door of the BROWN Residence and attempted to evade arrest. Each of the defendants was apprehended by law enforcement officers who were stationed around the perimeter of the BROWN Residence. JOSEPH DONALDSON and LEON SCARLETT were arrested in the driveway of the BROWN residence. CHRISTOPHER THOMPSON was apprehended in the driveway of the house immediately behind the BROWN Residence, and CHARLES JONES was arrested in the backyard of the same house. Agents also recovered a loaded Springfield .45 caliber semi-automatic pistol from the backyard of the BROWN Residence. Defendant KEVIN LEE was chased several blocks by law enforcement officers before he was ultimately apprehended after running across the Belt Parkway.

18. At the time of ANDRE WILSON's arrest, he was on the phone speaking with co-defendant LEEMAX NEUNIE. Agents

conducting surveillance at the WILSON Residence then observed NEUNIE arrive at the WILSON Residence driving a black BMW sedan. Agents then observed KWAUME WILSON, the brother of co-defendant ANDRE WILSON, exit the WILSON Residence. NEUNIE and KWAUME WILSON thereupon carried a cardboard box and a suitcase out of the WILSON Residence, placed them into the trunk of NEUNIE's BMW, and drove away from the house. NEUNIE and KWAUME WILSON were subsequently stopped by law enforcement officers several blocks from the WILSON Residence. NEUNIE, who was driving the BMW, consented to a search of the car, which revealed the same cardboard box and suitcase that agents observed NEUNIE and WILSON remove from the WILSON Residence. Both the cardboard box and the suitcase contained a green leafy substance which field tested positive for marijuana. The total amount of marijuana seized from NEUNIE and WILSON was approximately 25 pounds. At the time of his arrest, NEUNIE was in possession of a New York State driver's license, not in his own name, which had been used to open the account at one of the mailbox facilities from which the nine packages of marijuana had been picked up earlier that day by ANDRE WILSON and DERRICK BROWN.

19. Law enforcement officers then executed a search warrant on the WILSON Residence, which is the home residence of

16

ANDRE WILSON, KWAUME WILSON, LEMAX NEUNIE and VINCENT QUINONES. At the time of the search, VINCENT QUINONES was present in the house. The search revealed several plastic bags containing several pounds of marijuana, including a 1-pound bag found in the bedroom of LEEMAX NEUNIE. Agents also found marijuana packaging materials consistent with the type found during trash inspections of the BROWN Residence discussed above.

20. Following his arrest, the defendant LEEMAX NEUNIE waived his Miranda rights and agreed to make a statement to DEA agents. In sum and substance, NEUNIE admitted that he was a marijuana distributor working for DERRICK BROWN. He further stated that each time boxes of marijuana arrived in the mail, they were picked up by ANDRE WILSON, who delivered them to the BROWN Residence for distribution to NEUNIE and the other street distributors under DERRICK BROWN. NEUNIE has a previous 2006 arrest for possession of a controlled substance.

21. Following his arrest, the defendant VINCENT QUINONES waived his Miranda rights and agreed to make a statement to DEA agents. In sum and substance, QUINONES admitted that he was involved in bringing marijuana to the BROWN Residence with ANDRE WILSON. He further stated that each time boxes of marijuana arrived in the mail, they were picked up by ANDRE WILSON, who delivered them to the BROWN Residence for

17

distribution to other street distributors under DERRICK BROWN. QUINONES has a 1996 conviction for rape in the first degree.

22. Following her arrest, the defendant LATOYA MANNING waived her *Miranda* rights and agreed to make a statement to DEA agents. In sum and substance, MANNING admitted that DERRICK BROWN and other members of his organization distributed marijuana out of the BROWN Residence.

23. Following his arrest, the defendant RYAN ANDERSON waived his *Miranda* rights and agreed to make a statement to DEA agents. In sum and substance, ANDERSON stated that he purchased marijuana from various dealers in Brooklyn and Queens for redistribution and that he was present at the BROWN Residence to buy marijuana. ANDERSON has a prior conviction in 2004 for narcotics trafficking in Pennsylvania.

24. The defendant LEON SCARLETT has a 2003 conviction for criminal possession of a loaded firearm, a 2005 conviction for criminal sale of marijuana and a 2006 arrest for criminal possession of a weapon.

25. The defendant KWAUME WILSON has a 1999 conviction for criminal possession of marijuana and criminal possession of a weapon, a 2005 conviction for criminal possession of marijuana and 2006 arrest for criminal possession of marijuana.

26. The defendant KEVIN LEE has a 2010 arrest for criminal possession of marijuana.

27. The defendant FABIAN MANNING has a 2008 arrest for criminal possession of marijuana.

28. The defendant CHARLES JONES has a 2004 conviction for criminal sale of marijuana.

29. The defendant KAREEM FOREST has a 2005 arrest for endangering the welfare of a child, harassment, menacing; a 2007 conviction for criminal possession of marijuana; a 2008 arrest for credit card fraud, larceny, false impersonation and conspiracy; a 2009 conviction for patronizing a prostitute; a 2009 arrest for criminal possession of a weapon; a 2009 conviction for assault; and a 2009 arrest for unlawful imprisonment and harassment.

30. The defendant JOSEPH DONALDSON has a 1997 cocaine trafficking arrest. He has an active bench warrant from 2008 in Massachusetts as a result of this arrest.

31. The defendant ANDRE WILSON has a 1999 conviction for criminal possession of marijuana, a 2006 conviction for criminal possession of marijuana, a 2006 conviction for false personation and a 2008 arrest for assault.

32. The defendant DERRICK BROWN has prior convictions for attempted criminal possession of a loaded firearm, tampering

with public records and attempted possession of a forged instrument. He is also believed to be wanted in Jamaica for multiple murders.

WHEREFORE, your deponent respectfully requests that the defendants DERRICK BROWN, also known as "Mouthy," "Chris" and "Solo," ANDRE WILSON, also known as "Mario," KERRY GUNTER, LATOYA MANNING, DONOVAN DOWNER, CONSTANTINE BRANCH, FABIAN MANNING, KAREEM FOREST, RYAN ANDERSON, KAREEM REID, JOSEPH DONALDSON, LEON SCARLETT, CHRISTOPHER THOMSPON, CHARLES JONES, KEVIN LEE, LEEMAX NEUNIE, also known as "Jukes," KWAUME and VINCENT QUINONES be dealt with according to law.

_____
Joelle Ando
Special Agent
Drug Enforcement Administration

Sworn to before me this
8th day of October 2010

_____  _____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK