UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA                **MEMORANDUM AND ORDER**

    - against -                        10-cr-809 (S-2)(KAM)

CHRISTOPHER BARRET et al.,
          Defendants.

------------------------------------X

**MATSUMOTO, United States District Judge:**

      A three-count superseding indictment (the "Superseding

Indictment"), filed on August 4, 2011, charges defendants

Christopher Barret ("Barret"), Kareem Forrest ("Forrest"), Ryan

Anderson ("Anderson"), Joseph Donaldson ("Donaldson"), Kerry

Gunter ("Gunter"), Charles Jones ("Jones"), LaToya Manning

("Manning"), Leemax Neunie ("Neunie"), Vincent Quinones

("Quinones"), Leon Scarlett ("Scarlett"), Andre Wilson

("Wilson") and FNU LNU also known as "Sox"[1] (collectively,

"defendants") with one count of conspiracy to distribute

marijuana in violation of 21 U.S.C. §§ 841(a)(1),[2]

841(b)(1)(A)(vii)[3] and 846,[4] and 18 U.S.C. § 3551 *et seq.*[5]  It

------------------------------------

[1] This individual was arrested on September 22, 2011, and identified as Omar
Mitchell ("Mitchell").
[2] 21 U.S.C. § 841(a)(1) makes it unlawful for any person to "knowingly or
intentionally . . . manufacture, distribute, or dispense, or possess with
intent to manufacture, distribute, or dispense, a controlled substance."
[3] Under 21 U.S.C. § 841(b)(1)(A)(vii), any violation of 21 U.S.C. § 841(a)(1)
that involves "1000 kilograms or more of a mixture or substance containing a
detectable amount of marijuana, or 1,000 or more marijuana plants regardless
of weight" is punishable by a term of imprisonment of at least ten years, or
at least twenty years "if death or serious bodily injury results from the use
of such substance."

1

also charges all defendants except Mitchell with one count of distribution of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vii), and 18 U.S.C. §§ 2[6] and 3551 *et seq.* (ECF No. 210, Superseding Indictment ("S-2") ¶¶ 1-3.) In addition, the Superseding Indictment charges Barret, Forrest, Anderson, Gunter, Jones, Quinones, Scarlett, and Mitchell with one count of possession of a firearm in relation to drug trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A),[7] 2 and 3551 *et seq.* The Superseding Indictment also contains criminal forfeiture allegations pursuant to 21 U.S.C. §§ 853(a), (p);[8] 18 U.S.C. § 924(d);[9] and 28 U.S.C. § 2461(c).[10] (S-2 ¶¶ 4-7.)

---

[4] 21 U.S.C. § 846 provides that the penalties for conspiracy match those for the substantive underlying offense.

[5] 18 U.S.C. 3551 *et seq.* generally provides penalties for offenses described in any federal statute.

[6] 18 U.S.C. § 2 provides, in relevant part: "Whoever . . . aids, abets, counsels, commands, induces or procures [the] commission" of an act or "willfully causes an act to be done" against the United States is punishable as a principal.

[7] Under 18 U.S.C. § 924(c)(1)(A)(i), the use or possession of a firearm in relation or in furtherance of a drug trafficking crime is punishable by a term of imprisonment of at least five years.

[8] Under 21 U.S.C. § 853(a), any person convicted of the offenses charged in Counts One or Two of the Superseding Indictment must forfeit to the United States "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and . . . in the case of a person convicted of engaging in a continuing criminal enterprise . . . any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise." 21 U.S.C. § 853(p) provides that if, as a result of any act or omission of the defendant, property subject to forfeiture under subsection (a) is diminished in value or unavailable to the court, such property may be substituted by other property belonging to defendant.

[9] 18 U.S.C. § 924(d) provides for the seizure and forfeiture of any firearm involved in any knowing violation of 18 U.S.C. § 924.

Presently before the court are the following pre-trial motions filed by Anderson, Barret, Forrest, Jones, Manning and Scarlett (collectively, "movants").

**Anderson** moves for (a) inspection and release of the grand jury minutes; (b) suppression of Anderson's post-arrest statements as fruit of his unlawful arrest; (c) dismissal of the Superseding Indictment on grounds that it alleges multiple conspiracies; and (d) severance of his trial from that of his co-defendants. (ECF No. 250, Defense's Pretrial Motions and Memorandum of Law in Support by Ryan Anderson ("Anderson Br.").)[11]

**Barret** moves (a) to strike his aliases from the indictment; (b) to compel the provision of all discovery and evidence pursuant to Federal Rule of Criminal Procedure 16 and to direct the government to specify the relevant dates and times of pole camera and video surveillance images it intends to offer at trial; (c) to compel the provision of exculpatory and "potentially favorable evidence" pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); (d) for a bill of particulars; (e) to compel the government to reveal "specific physical evidence" that it

---

[10] Under 28 U.S.C. § 2461(c), if a defendant is convicted of an offense to which criminal forfeiture provisions apply, the court shall order the relevant forfeiture of property as part of the defendant's sentence.
[11] The court notes that counsel for Anderson once referred to his client as "Mr. Erskine" (*see* Anderson Br. at 20) and once referred to defendant Christopher Barret as "Richard barrett [sic]" (*see id*. at 22). These types of errors, which reflect lack of care and attention, are unacceptable, particularly where, as here, counsel's client faces serious criminal charges.

intends to present at trial; (f) for dismissal of the indictment and a *Cardona* hearing; (g) for severance of his trial from that of his co-defendants; (h) for dismissal of the indictment if certain surveillance images were destroyed by the government; (i) to compel early disclosure of Rule 404(b) evidence; (j) to compel disclosure of Jencks Act/3500 material and the government's witness list; (k) to compel the government to comply with Federal Rule of Evidence 104 in advance of trial; (l) to compel the government to identify informants and unindicted co-conspirators; (m) to require a hearing with respect to the authenticity, audibility and visual clarity of "any of any and all recorded statements and video images to be introduced at trial"; and (n) a hearing to determine whether certain co-conspirator statements may be admitted against him. (ECF No. 265-2, Memorandum in Support of Defendant Barret's Pre-Trial Motions ("Barret Br.").)[12]

**Forrest** moves for a bill of particulars. (ECF No. 257-3, Memorandum of Law in Support of Pre-Trial Motions by Kareem Forrest ("Forrest Br.").)

---

[12] The court spent substantial time and resources to review Barret's many pre-trial motions, a number of which the court finds baseless. Indeed, the court notes that, as discussed in this Memorandum and Order, certain of Barret's motions fall squarely outside the scope of well-settled legal precedents. *See, e.g.*, Barret's motion to compel early disclosure of Jencks material (section XIII) and motions to dismiss the indictment as insufficient and based on speculative allegations of destruction of evidence (section IX). The court cautions counsel who appear in this court not to submit claims without legal basis in the future.

**Jones** moves for (a) a bill of particulars and (b) severance of his trial from that of his co-defendants. (ECF No. 261-2, Memorandum of Law in Support of Defendant Charles Jones' Pretrial Motions ("Jones Br.").)

**Manning** moves for (a) severance of her trial from that of her co-defendants; and (b) suppression of her post-arrest statements as fruit of her unlawful arrest. (ECF No. 256-2, Memorandum of Law in Support of Motion for Miscellaneous Relief by LaToya Manning ("Manning Br."); ECF No. 280, Defendant Latoya Manning's Reply Memorandum in Support of Motion for Miscellaneous Relief ("Manning Reply").)

**Scarlett** moves for (a) severance of his trial from that of his co-defendants; (b) a bill of particulars; and (c) a finding that the search warrant related to "subject telephone 11" was legally insufficient. (ECF No. 253, Memorandum of Law in Support of Defendant Leon Scarlett's Pretrial Motion ("Scarlett Br.").)

The court will address Anderson's motion to suppress separately, having recently conducted a suppression hearing, upon Anderson's showing by affidavit that a hearing was arguably warranted. The government opposes all movants' motions. (*See generally* ECF No. 276, Memorandum in Opposition ("Gov't Opp'n").) The court has carefully reviewed the parties'

submissions, and for the reasons set forth below, the movants'
remaining motions are granted in part and denied in part.

<u>BACKGROUND</u>

**I.   Charges**

The allegations in the Superseding Indictment, the
Complaint and the government's submissions are as follows:

Between November 2006 and October 2010, defendants
allegedly conspired to distribute and possess with intent to
distribute one thousand kilograms or more of marijuana.  (S-2
¶ 1.)  In addition, the Superseding Indictment charges Barret,
Forrest, Gunter, Anderson, Jones, Quinones, Scarlett and
Mitchell with knowingly and intentionally carrying one or more
firearms during and in relation to the drug trafficking
conspiracy.  (*Id.* ¶ 3.)

In furtherance of the conspiracy, defendants allegedly
mailed packages containing marijuana from Arizona and California
to two Queens mailbox drop locations rented to Andre Wilson.
(ECF No. 1, Criminal Complaint ("Compl.") ¶¶ 2-3.)  When the
packages arrived in Queens, co-conspirators picked up the
packages, removed the marijuana from the boxes, stored the drugs
in various stash houses and distributed them to street-level
distributors for final sale.  (*Id.* ¶ 2.)  Members of the
conspiracy allegedly mailed proceeds from the illicit drug sales
from the Eastern District of New York to their suppliers in

California and Arizona through mail, electronic transfer of
funds, or courier. (*Id.*)

The Drug Enforcement Administration ("DEA"), United
States Postal Inspection Service ("Postal Inspectors"), and
various local law enforcement agencies investigated this Queens-
based drug distribution organization, which was allegedly led by
Barret, for approximately one year. (*Id.*) In January 2010, the
Postal Inspectors intercepted two large, brown cardboard boxes
measuring approximately 18 x 18 x 18 inches (the "Intercepted
Packages") that had arrived at Wilson's mailbox drop locations.
(*Id.* ¶ 4.) Upon executing a search warrant on the Intercepted
Packages, the Postal Inspectors discovered that the boxes
contained a total of approximately forty pounds of marijuana.
(*Id.*)

In August 2010, DEA agents installed a pole camera
outside a suspected stash house in Queens, which was identified
as the residence of Barret and his wife, Manning (the "Barret
Residence"). (*Id.* ¶ 5.) Through that pole camera and other
surveillance evidence, investigating agents observed numerous
individuals--including the defendants--enter and exit the Barret
Residence carrying brown cardboard boxes that closely resembled
the Intercepted Packages. (*Id.*)

During a one-month period between August 28, 2010 and
September 30, 2010, law enforcement officers tracked twenty-

three separate packages shipped by members of the organization to Wilson's mailbox drop locations. (*Id.* ¶ 7.) Pole camera and physical surveillance revealed that in each instance, Wilson delivered the packages from the mailbox drop locations to Barret's residence, where individuals--including Barret at times--unloaded the boxes. (*Id.*) The complaint alleges that each box contained approximately twenty pounds of marijuana. (*Id.*)

Other surveillance revealed that individuals left multiple large garbage bags and stacks of flattened cardboard boxes at the curb of the Barret Residence for trash collection. (*Id.* ¶ 11.) Surveilling agents believed that the discarded items contained packing materials used in the shipments of marijuana to Wilson's mailbox drop locations. (*Id.*)

Several searches of the trash items taken from the front curb of the Barret Residence yielded garbage bags that contained small amounts of a substance that later field-tested positive for marijuana; paraphernalia such as rubber bands and "plastic strips from vacuum-sealed foodsaver bags," which drug dealers allegedly often use to package drugs; and styrofoam peanuts, allegedly used to cushion the marijuana in the cardboard boxes shipped from Arizona and California to Wilson's mailbox drop locations. (*Id.* ¶¶ 9, 12.)

The Superseding Indictment also charges all defendants except Mitchell with distribution and possession with intent to distribute over 100 kilograms of marijuana on October 7, 2010. (S-2 ¶ 2.) That day, Postal Inspectors identified nine packages that were shipped from Arizona to Wilson's two mailbox drop locations. (Compl. ¶ 15.) Surveillance revealed that Wilson, who was followed closely by a minivan driven by Barret, retrieved the nine boxes from the mailbox drop locations. (*Id.*) Wilson and Barret then drove their respective vehicles to Barret's home, where they unloaded the boxes and brought them into the Barret Residence. (*Id.*)

Wilson and Barret then left the vicinity, although Wilson was subsequently arrested several blocks away while driving his vehicle. (*Id.*) Similarly, law enforcement agents arrested Barret approximately two blocks away from the Barret Residence as he drove the minivan. (*Id.*)

In the meantime, having observed these events, agents obtained and executed a search warrant upon the Barret Residence. (*Id.* ¶ 16.) Gunter, Manning, Forrest and Anderson, together with others, were present in the Barret Residence at the time of the agents' search, which revealed the nine cardboard boxes that Barret and Wilson had unloaded into the home. (*Id.*) Each box contained a green leafy substance that subsequently tested positive for marijuana. (*Id.*) Agents also

saw brick-like bales of marijuana, which had been removed from two of the boxes prior to the search, in plain view on the kitchen counter. (*Id.*) In addition, the search yielded a black garbage bag full of marijuana, heat-sealer machines, narcotics packaging materials consistent with those found during the trash inspections, and a loaded, semi-automatic .40-caliber pistol on the living-room floor. (*Id.*)

In addition, agents recovered a clear plastic bag containing marijuana and several thousand dollars in United States currency from the bedroom Barret and Manning shared. (*Id.*) Altogether, agents recovered approximately 100 kilograms of marijuana from the Barret Residence. (*Id.*)

The criminal complaint alleges that defendants Donaldson, Scarlett and Jones, together with others, fled out of the back door of the Barret Residence and attempted to evade arrest immediately after agents entered the home. (Compl. ¶ 17.) Law enforcement officers stationed around the perimeter of the Barret Residence apprehended each individual and placed him under arrest, however. (*Id.*) Agents also recovered a loaded Springfield .45-caliber semi-automatic pistol from the backyard of the Barret Residence, where Jones was apprehended. (*Id.*)

Agents arrested Neunie and Kwaume Wilson (brother of Andre Wilson) later in the day near Wilson's residence (the

"Wilson Residence"), where agents had observed Neunie and Kwaume

Wilson place a cardboard box and suitcase from the Wilson

Residence into the trunk of Neunie's car. (*Id*. ¶ 18.) The

cardboard box and the suitcase contained approximately twenty-

five pounds of a green leafy substance that field-tested

positive for marijuana. (*Id.*) Agents then executed a search

warrant on the Wilson Residence, where Neunie and Quinones lived

together with Wilson and Kwaume Wilson. (*Id*. ¶ 19.) That

search yielded numerous plastic bags containing several pounds

of marijuana, including a one-pound bag of marijuana found in

Neunie's bedroom. (*Id.*) In addition, agents found marijuana

packaging materials consistent with those found during the

aforementioned inspections of trash taken from the Barret

Residence. (*Id.*)

On October 8, 2010, all defendants except Mitchell

were arraigned on a criminal complaint before Magistrate Judge

James Orenstein. (*See* ECF Nos. 4, 8, 12, 26, 29, 37, 40, 48,

54, 58, 62, Minute Entries dated 10/8/2010.) Mitchell was

arrested and arraigned on September 22, 2011, approximately

seven weeks after a grand jury returned the Superseding

Indictment charging him and the other defendants with the

aforementioned counts. (*See* ECF No. 260, Minute Entry dated

9/22/2011.)

## DISCUSSION

### I.   Motion to Join in Co-Defendants' Motions

Anderson, Barret, Forrest, Jones and Scarlett move for leave to join in all motions made by their co-defendants to the extent that such motions are not inconsistent with their own. (*See* Anderson Br. at 25–26;[13] Barret Br. at 30; ECF No. 261, Notice of Motion as to Charles Jones, at ¶ 3; ECF No. 257, Notice of Motion as to Kareem Forrest ("Forrest Mot."), at ¶ 2; ECF No. 253–1, Notice of Motion as to Leon Scarlett, at ¶ 4.) The court grants Anderson, Barret, Forrest, Jones and Scarlett's motion for an order permitting them to join in each other's motions.

### II.  Motions for Severance

#### A. Alleged Grounds for Severance

Each movant moves to sever his or her own trial from that of the other defendants.  Although the movants' arguments are numerous and varied, each essentially argues that in the absence of a severed trial, he or she would suffer "spillover prejudice" because:

(1) the other co-defendants are charged with serious crimes that do not involve the movant (*see* Anderson Br. at 16; Manning Br. at 4–5);

---

[13] Because the Anderson Brief was not paginated, the court refers to the page number assigned by the Electronic Case Filing (ECF) system.

(2) the government seeks to prove or will prove multiple conspiracies at trial, even though the indictment alleges only a single conspiracy (*see* Anderson Br. at 16; Scarlett Br. at 7);

(3) "bad acts" evidence admitted against co-defendants pursuant to Federal Rule of Evidence 404(b) would prejudice the movant, whose prior criminal record is non-existent or less extensive (*see* Anderson Br. at 16; Jones Br. at 5);

(4) the movant's defense is "antagonistic" to that of his or her co-defendants such that the jury's acceptance of one's defense would preclude its acceptance of the movant's defense (*see* Anderson Br. at 16; Jones Br. at 5-6);

(5) the size,[14] complexity and length of an unsevered trial would preclude jurors from properly assessing the evidence and distinguishing each defendant's individual degree of culpability (*see* Anderson Br. at 22-23; Jones Br. at 6; Scarlett Br. at 7-10; Barret Br. at 21);

(6) the evidence against one or a select few defendants appears to be far more voluminous than the evidence against the remaining defendants, prejudicing those against whom relatively little inculpatory evidence exists, particularly because allegedly minor participants would be "exposed to the

---

[14] As of the date of this Memorandum and Order, four of the twelve defendants named in the Superseding Indictment have pleaded guilty.

great potential for guilt by association" if forced to proceed in a joint trial (*see* Anderson Br. at 20; Jones Br. at 7; Scarlett Br. at 9);

(7) if the movant testified at a joint trial, his co-defendants would seek to impeach his testimony, thus "preventing him from exercising his constitutional right to testify on his own behalf" (*see* Jones Br. at 6); and

(8) a post-arrest statement by a co-defendant would inculpate the movant, raising *Bruton* issues (*see* Jones Br. at 5; Barret Br. at 23).

In addition, Manning specifically moves to sever her trial from that of Barret and Forrest, on grounds that Barret and Forrest face firearm possession charges, and "Mr. Barret is the father of Ms. Manning's two children and may be her husband." (Manning Br. at 4–5.) Manning also moves to sever her trial from that of Anderson because he gave a statement that allegedly ties her to Barret. (*Id*. at 5.)

The movants also contend that curative instructions would inadequately address the prejudice each defendant would face in a joint trial (*see* Anderson Br. at 20–21; Barret Br. at 21; Scarlett Br. at 10).

### B. Legal Standard

Rule 8(b) of the Federal Rules of Criminal Procedure ("Rule 8(b)") provides that an indictment or information may

charge multiple defendants who allegedly "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Supreme Court has recognized and reaffirmed "a preference in the federal system for joint trials of defendants who are indicted together" because they promote efficiency and prevent the injustice of inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials also "limit inconveniences to witnesses, avoid delays in bringing defendants to trial and permit the entire story to be presented to a single jury." *United States v. Rucker*, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999).

Nevertheless, if a court finds that a joint trial would prejudice a defendant or the government, the court may sever the defendants' trial pursuant to Federal Rule of Criminal Procedure 14(a) ("Rule 14(a)").[15] The court should sever defendants who are properly joined under Rule 8(b) when the prejudice against a defendant is so great that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United*

---

[15] Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

*States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (quoting
*Zafiro*, 506 U.S. at 539).  Such a risk may be heightened where,
for example, "many defendants are tried together in a complex
case and they have markedly different degrees of culpability . .
. . ." *Zafiro*, 506 U.S. at 539.  Prejudice that warrants
severance may also be present if "essential exculpatory evidence
that would be available to a defendant tried alone were
unavailable in a joint trial." *Id.*

The determination of whether such prejudice exists is
highly fact-specific and must be evaluated on a case-by-case
basis. *Id.*  Moreover, the decision of whether to sever a trial
is committed to the sound discretion of the district court.
*United States v. Wilson*, 11 F.3d 346, 353 (2d Cir. 1993).

Notably, a defendant seeking severance under Rule 14
bears an "'extremely difficult burden' of proving . . . that the
prejudice would be so great as to deprive him of his right to a
fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649
(S.D.N.Y. 1997) (quoting *United States v. Casamento*, 887 F.2d
1141, 1149 (2d Cir. 1989)).

## C. Application

The court finds that the movants have failed to meet
their heavy burden of proving that severance is warranted.
First, the court finds unavailing the contention that the
introduction of evidence not directly related to each movant

would cause so much "spillover prejudice" as to warrant severance (*see* Barret Br. at 21–23; Manning Br. at 4–5; Jones Br. at 5, 7; Anderson Br. at 16–20.) Evidence adduced against one alleged co-conspirator is "neither spillover nor prejudicial" if it would be admissible at a separate trial against the movant as an act of a co-conspirator in furtherance of a conspiracy due to the nature of conspiratorial illegal activity. *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993); *see also United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir. 1984) (upholding denial of severance where significant amount of evidence admitted against co-conspirators would be admissible against the movant, "the least active but nevertheless a fully implicated conspirator," as acts of co-conspirators in the furtherance of a conspiracy).

For example, in *Rosa*, two members of a drug distribution conspiracy--Rosa and Rodriguez--contended that because they themselves were not charged with acts of violence, the admission of their co-defendants' violence-based charges at a joint trial caused spillover prejudice. 11 F.3d at 341. The Second Circuit found, however, that because "each of them was an integral part of the conspiracy, Rodriguez as a heroin processor, and Rosa as a principal wholesale purchaser of heroin for the Organization . . . . [e]vidence of the workings of the conspiracy would . . . have been admissible at the individual

17

trials of Rosa or Rodriguez, had they been tried separately."
*Id.* at 341-42. Consequently, evidence of their organization's
"routine *modus operandi*," which included the use of violence to
discipline members and discourage competitors, was chargeable to
Rosa and Rodriguez. *Id*. at 342. For the same reasons, the
introduction of evidence not directly related to each movant but
admissible as an act of a co-conspirator in furtherance of the
conspiracy does not warrant severance.

Second, severance is not necessarily required simply
because evidence is admissible against one defendant but not
another. *United States v. Carson*, 702 F.2d 351, 367 (2d Cir.
1983); *see also United States v. Rucker*, 586 F.2d 899, 902 (2d
Cir. 1978) ("The fact that evidence may be admissible against
one defendant but not against others does not require separate
trials."); *United States v. Cardascia*, 951 F.2d 474, 482 (2d
Cir. 1991) (noting that "disparit[ies] in the quantity of
evidence and of proof of culpability are inevitable in any
multi-defendant trial, and by themselves do not warrant a
severance").

The court recognizes that there are some instances in
which severance is necessary because the volume of irrelevant
evidence to be adduced at trial against one defendant is grossly
disproportional to that of his or her co-defendants. In *United
States v. DiNome*, 954 F.2d 839 (2d Cir. 1992), for example, the

Second Circuit found reversible error in the trial court's
denial of severance as to certain defendants because "an
infinitesimal fraction" of evidence offered during a sixteen-
month trial related to those certain defendants, who were
therefore "swamped" by a "mass of irrelevant evidence." *Id.* at
844–45.

The concerns in *DiNome* are absent in the instant
trial, which is estimated to last at most three weeks and
concerns eight defendants, seven of whom were arrested on the
same day in one of two locations and all of whom are alleged to
be involved in the same marijuana distribution conspiracy.
Indeed, the Second Circuit has stated that joint trials are
often "particularly appropriate" where, as here, defendants
allegedly participated in the same criminal conspiracy. *United
States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

The court specifically rejects Scarlett's claim that
severance is warranted because pole camera and other video
surveillance evidence showing Wilson's repeated receipt and
redelivery of contraband shipments to the Barret Residence
"relates only to [Barret and Wilson] and not . . . to the group
of people who [were] found at the Barret [R]esidence" on the
date of Scarlett's arrest. (*See* Scarlett Br. at 9–10.)  An
individual need not know or participate in all details of the
conspiracy in order to be a fully implicated co-conspirator; it

19

is sufficient that the individual knew of the conspiracy's general nature and extent. *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). Therefore, severance is not necessary simply because one form of evidence, video surveillance, may not directly implicate certain co-defendants.

Third, although the movants raise antagonistic defenses as a ground for severance (*see* Jones Br. at 5-6; Anderson Br. at 16), the Supreme Court has noted that "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538; *see also United States v. Carpentier*, 689 F.2d 21, 27-28 (2d Cir. 1982) ("A simple showing of some antagonism between defendants' theories of defense does not require severance.") Rather, the existence of antagonistic defenses rises to the level of prejudice requiring severance only when the core of one defendant's defense conflicts with the defense of another co-defendant. *Grant v. Hoke*, 921 F.2d 28, 32 (2d Cir. 1990).

In other words, substantial prejudice results from antagonistic defenses "only if it can be said that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'" *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (quoting *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir. 1984)). Mere

finger-pointing among defendants does not warrant severance.
*Id.* ("The mere fact that co-defendants seek to place the blame
on each other is not the sort of antagonism that requires a
severance.").

Here, no movant has articulated a specific manner in
which his or her defense is, at its core, at odds with the
defense of another, thereby justifying severance. Jones argues,
for example, that severance is necessary because his defense--
that "the gun recovered close to Mr. Jones at the time of his
arrest was not his but rather Brown's [Barret's]"[16]--is mutually
antagonistic with that of Barret. (Jones Br. at 5-6.)
Therefore, Jones contends, a joint trial would "prevent[] him
from exercising his constitutional right to testify on his own
behalf" because his co-defendants would likely seek to discredit
his testimony. (*Id.* at 6.) The court disagrees. Police
arrested four other individuals who were fleeing from the Barret
Residence when they apprehended and arrested Jones in the
backyard of the Barret Residence. (Compl. ¶ 17.) Therefore,
the core of Jones' defense--that the gun found near his feet did
not belong to him--does not conflict with Barret's defense to a

---

[16] Counsel for Jones erroneously refers to Barret as "Brown" throughout Jones'
motion papers. Although the court recognizes that the criminal complaint
refers to defendant Christopher Barret as "Derrick Brown," the court requests
that all counsel use each individual's name as it appears on the Superseding
Indictment for consistency and to preserve the integrity of the record and
prevent confusion.

degree that warrants severance.  The jury could believe, for instance, that *neither* defendant used or possessed the gun, and find instead that the gun was used or possessed by one of the many other individuals who were in or around the Barret Residence at the time of Jones' arrest.  Accordingly, the court remains unpersuaded that severance is warranted on this ground.

Fourth, the court disagrees with the movants' contention that this trial--which involves a three-count indictment and eight defendants--should be severed due to its size and complexity.  (*See* Barret Br. at 21; Scarlett Br. at 7–10; Jones Br. at 6; Anderson Br. at 22–23.)  As an initial matter, this case does not fall within the ambit of the Second Circuit's warning against "mega-trials" in *Casamento*, 887 F.2d at 1151, as Scarlett suggests.  In *Casamento*, the Second Circuit instituted limits on trials expected to exceed four months in length and involving more than ten defendants.  *Id.* at 1152.  In contrast, the instant trial is expected to last no longer than three weeks.  Therefore, *Casamento* is inapposite on this point, as the instant case falls far short of what the Second Circuit has considered a "mega-trial."

Furthermore, when the issues are straightforward, severance is not required simply because there are numerous defendants.  *See DiNome*, 954 F.2d at 842 (finding no error in denial of severance as to most of the defendants because

"[t]here is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence"). In *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987), another court in this district found that severance was appropriate where a joint trial involved fourteen defendants and twenty-two separate counts, some of which required the application of "highly technical and counter-intuitive [Racketeer Influenced and Corrupt Organizations Act] conspiracy elements to a great range of disparate predicate conspiracies and events." *Id*. at 750.

In contrast, despite acknowledging that mega-trials should be avoided, the Second Circuit did not deem severance necessary in *Casamento*, a case in which twenty-one defendants charged in a sixteen-count indictment were tried in a seventeen-month-long trial and the parties introduced thousands of exhibits and testimony from more than 275 witnesses. 887 F.2d at 1149. There, notwithstanding the extraordinary magnitude of the case, the Second Circuit held that the trial's length and complexity did not substantially prejudice defendants because "the nature of the evidence and the legal concepts involved in the case were not extraordinarily difficult to comprehend," as they might be in cases involving "abstruse economic theories" or

"technical statistical evidence and formulae." *Id*. Rather, as
here, the jurors in *Casamento* were called upon only to "grasp
the legal significance of shipments of narcotics, sales of
narcotics, and transfers of money." *Id*.

Finally, the court respectfully rejects the movants'
argument that curative instructions would inadequately address
any legitimate prejudice concerns (*see* Anderson Br. at 20-21).
The Second Circuit has found that, in lieu of severance, a trial
court may elect in its discretion to instruct jurors to consider
each defendant individually to diminish the prejudice that may
result in a joint trial in which the volume or weight of
evidence is greater as to some defendants than others.
*Spinelli*, 352 F.3d at 55. The Second Circuit has also held that
a trial court adequately remedied more general spillover
prejudice concerns by instructing the jury that "[t]here's no
group culpability here" and the jury "must consider the case
against each defendant on each charge separately." *United
States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997).

The Second Circuit has likewise upheld the use of
curative instructions to address prejudice that may result when
one defendant lacks a criminal history while his or her co-
defendants have extensive criminal records. *See Spinelli*, 352
F.3d at 55 n.3 (finding sufficient judge's instructions that
"mere association with one or more members of the conspiracy

24

does not automatically make a defendant a member" and "[a]
person may know or be friendly with a criminal without being a
criminal himself").

Nor is the court persuaded by the movants' remaining
arguments.  Scarlett, for example, claims that although the
indictment alleges a single conspiracy, the government will in
fact prove multiple conspiracies.  (Scarlett Br. at 7.)  "A
claim that the proof will show multiple conspiracies is not
grounds for severance under Rule 8(b)," however, because "[t]he
question of whether one or more conspiracies existed is one to
be resolved at trial by a properly instructed jury."  *United
States v. Vargas*, No. CR-89-0564, 1991 WL 10930, at *2 (E.D.N.Y.
Jan. 25, 1991).

Manning argues that her trial should be severed from
those of Barret and Forrest because she is susceptible to
"spillover prejudice" because "Barret is apparently the father
of Ms. Manning's two children and may be her husband," and she
previously lived with Forrest.  (Manning Br. at 2, 4-5; Manning
Reply at 5-6, 8.)  It is "not *per se* error to join husband and
wife as co-defendants in a conspiracy case."  *United States v.
Moten*, 564 F.2d 620, 630 (2d Cir. 1977) (citing *United States v.
Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972)).  In *Moten*,
the Second Circuit found that the trial court did not err in
denying severance for spouses facing narcotics conspiracy

charges because they failed to show that unfair prejudice would
result. *Id.* For the same reason, the court denies Manning's
motion here because she has presented nothing more than a
speculative argument that a joint trial with Forrest or Barret
would result in unfair prejudice.[17] *See United States v. Sasso*,
78 F.R.D. 292, 293 (S.D.N.Y. 1977) (denying wife's motion for
severed trial from that of her husband because wife's claims of
"[spillover] prejudice [were] at best speculative").

Jones argues that he is entitled to a severed trial
because a post-arrest statement made by Anderson, his co-
defendant, raises *Bruton* issues[18] because it "inculpates Mr.
Jones in an illegal activity."[19] (Jones Br. at 5, 7.) Instead
of severing a trial due to issues arising under *Bruton*, however,
the court may redact the co-defendant's statement, substituting
neutral pronouns or the phrase "another person" in place of the
allegedly implicated defendant's name. *United States v. Jass*,

---

[17] Manning also argues without offering any legal basis that her trial should
be severed from that of Anderson because "Mr. Anderson apparently gave a
statement which arguably ties Ms. Manning to Mr. Barrett [sic]." (Manning
Br. at 5.) The court rejects this claim as meritless.
[18] In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held
that reversible, prejudicial error resulted from the admission of a co-
defendant's confession that implicated defendant at a joint trial
notwithstanding the trial court's issuance of clear instructions that the
jury should use the confession only against the confessor, and not the
incidentally implicated defendant. *Id.* at 137.
[19] Neither Jones nor the government quote Anderson's full statement for the
court's review, but the government represents that Anderson "stated, in sum
and substance, that he was at the Barret Residence on October 7, 2010 because
he was smoking marijuana and visiting his friends 'Speedy' (defendant Jones)
and 'Chris' (defendant Barret), whom he had known for approximately one
year." (Gov't Opp'n at 15.)

569 F.3d 47, 53 (2d Cir. 2009); *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir. 1989) (approving substitution of neutral pronouns and phrases for names of co-defendants in confession of non-testifying defendant).

Thus, the government proposes the following redacted version of Anderson's statement: "Anderson was at 133-37 147th Street in Jamaica, New York on October 7, 2010 because he was smoking marijuana and visiting some friends whom he had known for approximately one year." (Gov't Opp'n at 15-16.) Assuming without deciding that Anderson's post-arrest statement does suggest that Jones was smoking marijuana, as Jones contends (*see* Jones Br. at 5), the court finds that the substitution of neutral phrases in the government's proposed redaction adequately mitigates Jones' *Bruton* concern. The court notes, however, that if Anderson gave his original statement in first-person language (for example, "I was at 133-37 147th Street . . ."), any redacted version of Anderson's statement should retain the first-person phrasing.[20]

For the foregoing reasons, the court denies the movants' motion for severance.

_____

[20] Barret also raises a *Bruton* issue in his moving papers, although he offers no facts or authority in support of his contention. (*See* Barret Br. at 21). Accordingly, the court has no basis upon which to assess the legitimacy or merit of Barret's purported assertion.

### III. Motion for Bill of Particulars

Barret, Anderson, Jones, Scarlett and Forrest move for a bill of particulars on grounds that the government's disclosures to date do not sufficiently particularize the charges they face and are insufficient to prevent undue surprise. (Barret Br. at 12–16; Scarlett Br. at 11–13; Forrest Br. at 2–5; Jones Br. at 2–3, 8.) Each moves for a bill of particulars, alleging that the indictment is overly vague and fails to "provide the essential elements and facts needed to inform defendant of the charges, let alone the particulars of any conspiracy involving defendant and/or firearms violations"; that discovery and other documents provided by the government do not sufficiently enable the moving defendant to investigate the charges and prepare for his respective defense; and that his right to a fair trial will be violated in the absence of the issuance of a bill of particulars, particularly because the alleged conspiracy spanned a four-year period. (Barret Br. at 12–16; Forrest Br. 2–5; Jones Br. at 2–3, 8; Scarlett Br. at 5, 11–13.) In opposition, the government argues that the Superseding Indictment, complaint, and extensive discovery provided to date provide sufficient information regarding each charge. (Gov't Opp'n at 20-26.)

## A. Legal Standard

A defendant may seek a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) in order to (1) "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial"; (2) "to prevent surprise"; and (3) "to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). The district court has discretion to decide whether to grant a bill of particulars. *Bortnovsky*, 820 F.2d at 574 (citing *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984)).

Notably, "[a] bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010)). Therefore, the court may deny a motion for a bill of particulars "if the information sought by defendant is provided in the indictment or in some acceptable alternate form." *Bortnovsky*, 820 F.2d at 574; *see also United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003) (no bill of particulars is warranted where "the

Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them"); *United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998) (finding district court did not abuse its discretion by denying a bill of particulars to defendants where the government had already provided "extensive additional information" regarding their alleged involvement in the charged offenses "so as to enable them to understand the nature of the charges against them, to prepare a defense, and avoid unfair surprise at trial").

Moreover, numerous courts in this Circuit have cautioned that "[a]cquisition of evidentiary detail is not the function of the bill of particulars." *Torres*, 901 F.2d at 234; *see also United States v. Larracuente*, 740 F. Supp. 160, 163 (E.D.N.Y. 1990) ("A bill of particulars is not to be viewed as a discovery device to seek and compel disclosure of the Government's evidence prior to trial."); *United States v. Feola,* 651 F. Supp. 1068, 1123 (S.D.N.Y. 1987), *aff'd without opp.,* 875 F.2d 857 (2d Cir. 1989) (noting that "courts have refused to treat a bill of particulars as a general investigative tool for the defense, or as a device to compel disclosure of the Government's evidence or its legal theory prior to trial").

Accordingly, "[t]he applicable standard for whether a bill of particulars should issue is not whether the information

sought would be helpful to the defense, but whether it is necessary." *United States v. Batista*, No. 06-CR-265, 2009 WL 910357, at *9 (E.D.N.Y. Mar. 31, 2009); *see also Torres*, 901 F.2d at 234 ("The function of a bill of particulars is to provide [the] defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at the trial.") (emphasis added) (internal quotations omitted); *United States v. Triana-Mateus*, No. 98 CR. 958, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) ("In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'") (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)).  In determining whether a defendant has shown such necessity, the trial court "must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery." *United States v. Solomonyan*, 452 F. Supp. 2d 334, 349 (S.D.N.Y. 2006) (internal citation omitted).

### B. Application

Anderson, Barret, Forrest, Jones and Scarlett each face charges of conspiracy to distribute marijuana, distribution of marijuana, and possession of a firearm in relation to drug

trafficking.  (S-2 ¶¶ 1-3.)  Each movant moves for a litany of detailed requests, all of which the court has considered.

Forrest, for example, claims that in order to defend himself, he needs answers to specific questions, including information regarding his purported acts of violence, gang affiliation and alleged role as a manager in the conspiracy. (Forrest Br. at 4.)  Barret demands, *inter alia*, information regarding the "exact date(s), time(s) and place(s) (including address)" and the manner in which he joined and left the alleged conspiracy; "any and all conduct on the part of Mr. Barrett [sic] alleged to have been in furtherance of the conspiracy"; "[t]he precise conduct of Mr. Barrett [sic] alleged to establish the element of agreement, combination and conspiracy"; and "any other overt acts of the defendant intended to be proven at trial." (Barret Br. at 15-16.)  Scarlett seeks a bill of particulars that details the roles of each defendant and the timeframe and nature of each defendant's purported acts, a description of the weapon he allegedly possessed and the circumstances surrounding that possession. (Scarlett Br. at 11-13.)  Jones' requests are similar to those of the other movants.

Having reviewed the Superseding Indictment, the criminal complaint filed on October 8, 2010, the affidavits in support of the search warrants, and the letters that accompanied the government's discovery disclosures to date (*see* ECF Nos.

219, 234–37, 255, and 274), the court rejects the movants'
arguments and denies their motions for a bill of particulars.
In so ruling, the court is mindful that it "cannot compel the
government to disclose, through a bill of particulars, 'the
manner in which it will attempt to prove the charges, the
precise manner in which a defendant committed the crime charged,
or to give a preview of its evidence and legal theories, lest
the defendant tailor his testimony to explain away the
[g]overnment's case.'" *United States v. Batista*, No. 06-CR-265,
2009 WL 910357, at *9 (E.D.N.Y. Mar. 31, 2009) (quoting *United
States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993));
*United States v. Conley*, No. 00 CR 0816, 2002 WL 252766, at *4
(S.D.N.Y. Feb. 21, 2002) ("The Government is not required to
provide information that would, in effect, give the Defendant a
preview of the Government's case before trial.")

Moreover, the court finds that "[w]hat defendant[s]
seek[] is in the nature of the 'wheres, whens, and with whoms'
that Courts have held to be beyond the scope of a bill of
particulars." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569
(S.D.N.Y. 2001) (citation omitted); *see also Torres*, 901 F.2d at
233–34 (affirming denial of motion for bill of particulars where
defendant sought date he joined conspiracy, identity of co-
conspirators, and precise dates and locations of his overt
acts); *United States v. Matos-Peralta,* 691 F. Supp. 780, 791

(S.D.N.Y. 1988) (finding courts "consistently reject[ ] demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant" because "the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme").

Here, the complaint specifies the names of many of the movants' alleged co-conspirators; includes the dates of the alleged events and the places where they occurred; and the means and methods by which the conspiracy was allegedly carried out. Moreover, the government's discovery disclosures, which include video surveillance recordings at the Barret and Wilson Residences and numerous articles of physical evidence, likewise satisfy the court that each defendant--especially Barret-- possesses sufficient information about the details of the charges he faces.

The court notes in particular that the government's December 15, 2010 memorandum provides ample detail regarding the charges Forrest faces. (*See* ECF No. 133, Detention Memorandum as to Kareem Forrest ("Forrest Det. Mem.").) In addition to providing specific information about the alleged conspiracy's routine operations, the letter includes the following statement about Forrest's alleged role in the conspiracy:

> The defendant has been captured on
> surveillance video on numerous occasions
> engaging in narcotics-related activities,
> including carrying boxes containing
> marijuana into the Barret Residence on
> several occasions, as well as acting as a
> lookout when deliveries of boxes were
> taking place. Moreover, as discussed,
> prior to his arrest, the defendant
> regularly transported and had ready access
> to illegal firearms and narcotics.

(Forrest Det. Mem. at 6.) The court finds that this degree of particularity more than suffices to provide Forrest adequate notice of the charges he faces.

Although the complaint, Superseding Indictment and discovery may not include the same degree of information as to Anderson, Jones and Scarlett, the court finds that the government's pre-trial discovery disclosures and other documents in the record suffice. In *Triana-Mateus*, 2002 WL 562649, a case in which a defendant was charged with participation in a large-scale money-laundering conspiracy that spanned four-and-a-half years, the district court denied defendant's motion for a bill of particulars because the indictment "clearly specifie[d] the names of [defendant's] co-conspirators, the dates and places where and when the alleged events occurred, and the means and methods by which the conspiracy was carried out." *Id*. at *5. Moreover, the court found that the government had provided defendant with "ample discovery regarding the allegations made in the Indictment, including documents, tape recordings, his

35

post-arrest statements, a police report and a surveillance video of defendant." *Id.*

Similarly, in *United States v. Cephas*, 937 F.2d 816 (2d Cir. 1991), the Second Circuit found that a district court did not abuse its discretion by denying a motion for a bill of particulars for a defendant who faced charges of narcotics distribution conspiracy and numerous firearms violations. *Id.* at 823. There, the Circuit Court found that "[a]lthough the government did not list the specific activities which showed how he furthered the criminal enterprise or the conspiracy, such specific acts need not be alleged with respect to every named defendant, if the indictment is otherwise sufficient and names the other persons involved in the criminal activity." *Id.* Here, the court finds that each movant has been "sufficiently advised as to the charges against him as well as the elements of the offenses." *Id.* Accordingly, their motions for a bill of particulars are denied.

## IV. Motion to Compel Identification of Government's Informants and Any Unindicted Co-Conspirators

Barret moves for an order compelling the immediate disclosure of the name, address, Social Security number, criminal history and current whereabouts of any confidential

informants, cooperating co-defendants[21] and unindicted co-conspirators upon whom the government has relied. (Barret Br. at 27–28.)[22] The government counters that the Second Circuit and district courts in this Circuit have routinely denied such requests, and that the movants are merely "attempting to have the government preview its evidence and particularize its theory of the defendants' guilt." (Gov't Opp'n at 26.)

## A. Confidential Informants

### 1. Legal Standard

"The government generally enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" *United States v. Jackson*, 345 F.3d 59, 69 (2d Cir. 2003) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). The Second Circuit has recognized that the government's "interest in protecting the anonymity of informants who furnish information regarding violations of law is strong" because "withholding an informant's identity improves the chances that such a person will continue providing information and encourages other potential informants to aid the government." *United States v. Fields*, 113 F.3d 313, 324 (2d

---

[21] The court discusses Barret's motion for disclosure of the identities of cooperating co-defendants, if any, in Section XIV.
[22] Barret also requests this information as part of his motion for a bill of particulars. (*See* Barret Br. at 14-15.)

Cir. 1997) (citing *Socialist Workers Party v. Attorney General,* 565 F.2d 19, 22 (2d Cir. 1977)).

Nevertheless, "'[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,' the 'fundamental requirements of fairness' require that 'the privilege must give way.'" *Jackson*, 345 F.3d at 69-70 (quoting *Roviaro*, 353 U.S. at 60-61). Therefore, a district court must "'balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense,' based on 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Id.* at 70 (quoting *Roviaro*, 353 U.S. at 60-61). "If this balancing favors the defendant, then he is entitled to learn the identity of the government's informant." *Id.*

"The defendant bears the burden of showing the need for disclosure of an informant's identity." *Fields*, 113 F.3d at 324 (citing *United States v. Manley,* 632 F.2d 978, 985 (2d Cir. 1980)). To do so, he must establish that he will be deprived of his right to a fair trial absent such disclosure. *Id.* (citing *Roviaro*, 353 U.S. at 60-61). Although the decision to disclose an informant's identity is within the sound discretion of a

district court, "[s]peculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden." *Id.* The Second Circuit has found that "disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988).

Defendants in *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516 (S.D.N.Y. 2007), moved for pre-trial disclosure of the identity of a government informant, arguing that "it is apparent from review of discovery provided to date that the Government will rely on the testimony of Government informants in prosecuting this case" and "[the informants'] testimony will clearly be relevant to the guilt or innocence" of the defendants. *Id.* at 520–21. In denying defendants' motion, the court noted that "[s]uch broad allegations . . . are insufficient to meet Defendants' burden" and that "at best, these statements constitute a level of speculation that, absent more, does not warrant disclosure of the identity of informants." *Id.* at 521.

## 2. Application

Here, Barret states that "[o]n information and belief, key portions of the Government's case against the defendant consist of testimony of confidential informants or cooperating

co-defendants." (Barret Br. at 27.) He also contends that he seeks information about the informants "to permit the defense an opportunity to interview them in preparation for trial." (*Id.* at 28.) Barret has made a lesser showing than that found to be insufficient in *Ordaz-Gallardo*, 520 F. Supp. 2d at 520-21; *see also United States v. Ojeikere*, 299 F. Supp. 2d 254, 262 (S.D.N.Y. 2004) (denying defendant's request for production of confidential informant's identity because he failed to show why such information would add materially to his defense and he "simply speculate[d] about what further information the informant might be able to provide"). Accordingly, Barret has failed to meet his burden and the court denies his motion to compel the disclosure of information regarding any government informants.

### B. Unindicted Co-Conspirators

#### 1. Legal Standard

As this court has elsewhere noted, "t[h]ere is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted." *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009); *see United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) (noting that the Second Circuit has affirmed both denials and grants of requests for the identities of unindicted co-conspirators). Accordingly, "[t]he determination

of whether to compel the Government to provide a defendant with the identities of unindicted co-conspirators, whether or not they will be called as witnesses, is well within the discretion of the district court." *United States v. Shteyman*, No. 10 CR 347, 2011 WL 2006291, at *8 (E.D.N.Y. May 23, 2011) (citing *Nachamie*, 91 F. Supp. 2d at 572).

"The question is whether the names of unindicted co-conspirators are necessary to prepare a defense and avoid surprise." *Solomonyan*, 451 F. Supp. 2d at 641. Courts in this Circuit have considered the following six factors in determining whether to grant requests for the identities of unindicted co-conspirators:

> (1) the number of co-conspirators;
> (2) the duration and breadth of the alleged conspiracy;
> (3) whether the Government has otherwise provided adequate notice of the particulars;
> (4) the volume of pre-trial disclosures;
> (5) the potential danger to co-conspirators; and
> (6) the potential harm to the Government's investigation.

*Kahale*, 789 F. Supp. 2d at 372.

Where the number of co-conspirators is potentially large, the first factor weighs in favor of granting the disclosure request. *Id*. If the alleged conspiracy took place over a long period of time, or if its scope was expansive, whether in terms of complexity or geographic reach, the second factor also weighs in favor of granting the request. *See id*.

41

(noting that the five-year duration of alleged conspiracy that
"spanned from the New York metropolitan area to Nevada and
potentially to unknown international locations" weighed in favor
of compelling disclosure of unindicted co-conspirators); *see
also Nachamie*, 91 F. Supp. 2d at 573 (granting request for
identification of known unindicted co-conspirators in case
involving a "large number of co-conspirators (eight defendants
and an unknown number of unindicted co-conspirators)" and
lasting a "significant period of time (more than three years)").

       The third factor, whether the government has otherwise
provided adequate notice of the particulars, weighs in favor of
disclosure when "defendants do not have adequate information to
prepare for trial and avoid unfair surprise." *Kahale*, 789 F.
Supp. 2d at 372. The fourth factor considers both whether the
government has "provided significant detail to the defendants"
and whether the government has "unfairly overwhelmed
[defendants] with mountains of unorganized discovery." *Id.; see
also Nachamie*, 91 F. Supp. 2d at 573 (finding that because "the
Government has produced a substantial number of documents--more
than 200,000 pages--but has failed to give defendants adequate
notice of the particular charges against them," disclosure would
allow defendants to prepare for trial). Where the government
asserts that disclosure would "jeopardize [the] safety [of the
unindicted co-conspirators], create risk of witness tampering,

or compromise an ongoing government investigation," the fifth
and sixth factors weigh against disclosure. *Kahale*, 789 F.
Supp. 2d at 373; *cf. United States v. Chalmers,* 410 F. Supp. 2d
278, 286 (S.D.N.Y. 2006) (rejecting request for identification
of unindicted co-conspirators where there was "significant"
concern for ongoing government investigation).

## 2. Application

Here, the first and second factors weigh in favor of
disclosure because there are twelve defendants charged in the
Superseding Indictment, the alleged conspiracy spanned a period
of approximately four years, and the conspiracy involved
activities that occurred in New York, California and Arizona
(*see* S-2 ¶¶ 1-3; Compl. ¶ 2).

The third and fourth factors weigh against disclosure
because the court finds that, as discussed *supra* in Section III,
the government has already adequately apprised each defendant of
the charges brought against him or her so as to avoid undue
surprise at trial, and the government has provided ample
discovery but has not overwhelmed defendants with overly
voluminous discovery. *See United States v. Rodriguez*, No. 99-
CR-367, 1999 WL 820558, at *2 (S.D.N.Y. Oct. 13, 1999) (denying
request for identity of known co-conspirators because "the
indictment, particularly when coupled with the discovery already

provided to the defendant, allows [him] both to prepare his defense and to avoid prejudicial surprise at trial").

Notably, although "knowing the identity of unindicted co-conspirators might be useful to the defense, 'the question is not whether the information would be useful to the defense, but rather whether it is necessary.'" *Solomonyan*, 451 F. Supp. 2d at 642 (quoting *Chalmers*, 410 F. Supp. 2d at 286–87). In *Solomonyan*, the district court denied the request for identities of unindicted co-conspirators in a case involving twenty defendants, finding that despite the large number of identified co-conspirators, the arms trafficking conspiracies alleged were not in themselves complex, so defendants did not need, "as compared, say, to defendants in an intricate fraud conspiracy, to identify unnamed co-conspirators in order to piece together the nature of the charges against them." *Id*.

Moreover, although the government has not made any assertion that disclosure of the identities of unindicted co-conspirators would jeopardize their safety, create any risk of witness tampering, or otherwise compromise an ongoing government investigation, safety is a concern in this case because the alleged conspiracy involves narcotics trafficking and the criminal complaint alleges regular use of firearms in connection with the conspiracy. *See Nachamie,* 91 F. Supp. 2d at 573 (noting no concern that disclosing identities of unindicted co-

conspirators would endanger those individuals where the crimes charged involved fraud, "not narcotics trafficking or murder"). Based on its consideration of the foregoing factors and authorities, the court denies Barret's motion for an order compelling the immediate disclosure of information related to unindicted co-conspirators.

## V. Motion to Dismiss Indictment Alleged to be Based on Multiple Conspiracies

Anderson moves for dismissal of the indictment--which alleges his participation in a single drug distribution conspiracy--on grounds that the evidence supports a finding of multiple conspiracies. (*See* Anderson Br. at 14-15.) Anderson denies having any common agreement, goal or venture with his co-defendants and argues that he was a "buyer to sell in his own conspiracy." (*Id.*) In opposition, the government argues that whether it has proven a single or multiple conspiracy is an issue for the jury to decide, not grounds for the indictment's dismissal. (Gov't Opp'n at 31–33.)

### A. Legal Standard

Federal Rule of Criminal Procedure 8(a) requires the government to charge "separate counts" in an indictment for each distinct offense alleged. Fed. R. Crim. P. 8(a). Accordingly, "[a]n indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in

contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).

Application of this doctrine to conspiracy indictments "presents 'unique issues, for a single agreement may encompass multiple illegal objects.'" *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010) (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). The government may prove the existence of a single conspiracy among individuals by showing their agreement to participate in a "collective venture directed toward a common goal." *United States v. Sureff*, 15 F.3d 225, 229-30 (2d Cir. 1994) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)). Notably, however, "members of the conspiracy do not have to conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member," nor is a single conspiracy "transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations." *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989) (internal citations omitted).

Moreover, specifically in the context of narcotics conspiracies, the Second Circuit has found that "even where there are multiple groups within an alleged conspiracy, a single conspiracy exists where the groups share a common goal and depend upon and assist each other, and we can reasonably infer that 'each actor was aware of his part in a larger organization where others performed similar roles.'" *United States v. Berger*, 224 F.3d 107, 115 (quoting *United States v. Bertolotti*, 529 F.2d 149, 154 (2d Cir. 1975)).  Therefore, "a single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *Id.* at 114-15 (quoting *Maldonado-Rivera*, 922 F.2d at 963).

Finally, "[i]f the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury." *United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (citing *Vanwort*, 887 F.2d at 383); *see Berger,* 224 F.3d at 114 ("Whether the government's proof shows a single conspiracy or multiple conspiracies is a question of fact for a properly instructed jury.") (internal quotation marks omitted); *see also Sureff*, 15 F.3d at 229 (same).

## B. Application

Because the court finds that the indictment in the instant case, on its face, sufficiently alleges a single conspiracy, the court denies Anderson's motion to dismiss the indictment on grounds that it impermissibly combines multiple crimes in one count of conspiracy. *See Rajaratnam*, 736 F. Supp. 2d at 688–89 (finding the fact that the indictment "facially alleges a single conspiracy is enough to warrant denial of [defendant's] motion"); *United States v. Beech-Nut Nutrition Corp.*, 659 F. Supp. 1487, 1491–92 (E.D.N.Y. 1987) (denying motion to dismiss indictment count on grounds that it alleged multiple conspiracies, finding that the indictment on its face alleged a "single conspiracy with multiple objects," and holding that "[w]hether the evidence adduced at trial supports the single conspiracy alleged in Count One is a question which must be resolved at trial") (citing *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir. 1980)); *United States v. Szur*, No. 97-CR-108, 1998 WL 132942, at *11 (S.D.N.Y. Mar. 20, 1998) ("[S]ince the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single or multiple conspiracies exist is a question for the jury and is not a basis to dismiss the conspiracy count.")

## VI. Motion for Court's Inspection and Release of the Grand Jury Minutes

Anderson moves for a comprehensive order requiring the government to produce (1) personal and contact information for all witnesses who appeared before the grand jury in this case; (2) a "statement as to whether or not unauthorized persons appeared before the Grand Jury which returned the Indictment at a time when the Grand Jury was involved in its functions in relation to the instant matter"; (3) a transcript of testimony given before the grand jury; and (4) a transcript of sworn statements made by attorneys for the government to the grand jury.  (Anderson Br. at 9–10.)  The government opposes Anderson's motion, arguing that "defendant's unsupported speculation about possible grand jury abuses is far from sufficient to merit disclosure of grand jury materials to either the Court or the defendant."  (Gov't Opp'n at 35.)

### A. Legal Standard

Maintaining the secrecy of grand jury proceedings is a tradition in the United States that pre-dates the birth of the nation itself.  *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (citing *In re Biaggi,* 478 F.2d 489, 491 (2d Cir. 1973)).  Federal Rule of Criminal Procedure 6(e) codifies the rule of secrecy, which has multiple purposes, including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure

the utmost freedom to the grand jury in its
deliberations, and to prevent persons subject
to indictment or their friends from importuning
the grand jurors; (3) to prevent subornation of
perjury or tampering with the witnesses who may
testify before [the] grand jury and later
appear at the trial of those indicted by it;
(4) to encourage free and untrammeled
disclosures by persons who have information
with respect to the commission of crimes; [and]
(5) to protect [the] innocent accused who is
exonerated from disclosure of the fact that he
has been under investigation, and from the
expense of standing trial where there was no
probability of guilt.

*Craig*, 131 F.3d at 102 (quoting *United States v. Procter &*

*Gamble Co.*, 356 U.S. 677, 681–82 n.6 (1958)).  The Supreme Court

has noted that secrecy also "encourage[s] all witnesses to step

forward and testify freely without fear or retaliation" because

"[t]he grand jury as a public institution serving the community

might suffer if those testifying today knew that the secrecy of

their testimony would be lifted tomorrow." *Procter & Gamble*

*Co.*, 356 U.S. at 682.

Despite the strong presumption in favor of such

secrecy, a district court may authorize disclosure of a grand-

jury matter "at the request of a defendant who shows that a

ground may exist to dismiss the indictment because of a matter

that occurred before the grand jury." Fed. R. Crim. P.

6(e)(3)(E)(ii).  But first, the defendant must satisfy a heavy

burden of showing that "compelling necessity" outweighs

countervailing public policy in order to disturb the presumption

of the "indispensable secrecy of grand jury proceedings."

*Procter & Gamble Co.*, 356 U.S. at 682.

Consequently, in this Circuit, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Torres*, 901 F.2d at 233 (citations and internal quotations omitted); *see United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct."); *United States v. Basciano*, 763 F. Supp. 2d 303, 315 (E.D.N.Y. 2011) ("It is axiomatic that 'grand jury proceedings are accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'") (quoting *United States v. Tranquillo*, 606 F. Supp. 2d 370, 381 (S.D.N.Y. 2009)). Moreover, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Torres*, 901 F.2d. at 233.

## B. Application

Anderson falls far short of satisfying the heavy burden of showing compelling necessity through specific and concrete factual allegations, particularly because "[g]rand jury proceedings carry a presumption of regularity." *See Torres*, 901 F.2d at 232 (internal quotation marks and citations omitted).

In support of his motion, Anderson does not allege any government misconduct or set forth any factual allegation that the grand jury proceedings were tainted. On the contrary, he argues that the court should release and review the grand jury minutes *so he can determine* whether any irregularities occurred. (*See* Anderson Br. at 10-12.)

In *Basciano*, another court in this district denied a motion to compel the production of grand jury minutes because it was based entirely on conjecture instead of fact. 763 F. Supp. 2d at 316. There, the defendant speculated--without supporting facts--that the government's attorney may have been supervising the presentation of evidence to the grand jury in a related case. *Id*. The court found that defendant's "unfounded assumptions" and "series of conjectural statements" were "insufficient to satisfy the particularized showing required to overcome grand jury secrecy, let alone to require the dismissal of the indictment." *Id*.

In the instant case, Anderson offers even less than that which the *Basciano* court found to be insufficient; indeed, he does not allege a single non-speculative impropriety to support his request. Accordingly, defendant's motion for release and review of the grand jury minutes is denied.[23] *See,*

---

[23] Anderson erroneously contends that "the reasons to maintain Grand Jury secrecy are minimized or nonexistent" because the grand jury has already

*e.g.*, *Ordaz-Gallardo*, 520 F. Supp. 2d 516, 519–20 (S.D.N.Y. 2007) (denying motion to disclose grand jury materials because defendants offered "little more than speculation that some impropriety may have occurred before the grand jury," which fell "well short of the 'particularized need'" required under well-settled law); *United States v. Corbin*, No. 09 CR 00354, 2009 WL 4505513, at *4 (E.D.N.Y. Dec. 1, 2009) (denying defendant's motion for review of grand jury proceedings because defendant failed to demonstrate specific occurrences of government misconduct).

## VII. Motion to Suppress Evidence Obtained From Leon Scarlett's Cellular Telephone

On October 18, 2010, Magistrate Judge Viktor Pohorelsky issued a warrant (the "Telephone Search Warrant") based on an affidavit from DEA Special Agent Joelle Ando, which outlined the investigation and events leading to the arrest of numerous defendants on October 7, 2010. (*See* ECF No. 281-1, Search Warrant dated 10/18/2010 ("Search Warrant"); *see generally* ECF No. 276-3, Affidavit in Support of Search Warrants ("Ando Aff.").) Among other things, the Telephone Search

---

concluded its proceedings and issued an indictment in this case (*see* Anderson Br. at 11–12). On the contrary, "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir. 1980) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). Consequently, even after the grand jury has completed its deliberations and returned an indictment, the requirement of showing a particularized necessity remains. *Id.*

Warrant authorized the search of "Subject Telephone 11," the cellular telephone that officers recovered from Scarlett on the day of his arrest. (*See* Search Warrant at 1.)

Scarlett now moves to suppress information seized from Subject Telephone 11 on grounds that there was a "complete absence of probable cause" to support Judge Pohorelsky's issuance of the Telephone Search Warrant because Special Agent Ando's affidavit lacked specific allegations regarding a link between Subject Telephone 11 and relevant conversations, text messages, photographs, phone numbers, or other information. (Scarlett Br. at 14-15.) The government opposes Scarlett's motion, arguing that the Telephone Search Warrant was valid and that facts alleged in Special Agent Ando's affidavit adequately established probable cause. (Gov't Opp'n at 38-39.) The government argues in the alternative that even if the Telephone Search Warrant was invalid, evidence obtained from Subject Telephone 11 is nonetheless admissible because officers who conducted the search acted in reasonable reliance on a search warrant that they believed to be adequate. (*Id.* at 39-42.)

## A. Legal Standard

The Fourth Amendment, which prohibits "unreasonable searches and seizures," requires that "no warrants shall issue, but upon probable cause, supported by Oath." U.S. CONST. amend. IV. The Supreme Court explained in *Illinois v. Gates*, 462 U.S.

213 (1983), that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts-- not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232; *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008).  The Court further stated that a magistrate judge's determination of whether probable cause exists requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Falso*, 544 F.3d at 117 (quoting *Gates*, 462 U.S. at 238).

### B. Application

Scarlett does not contest the validity or truth of the statements in Special Agent Ando's affidavit; rather, he argues that the information in the affidavit was insufficient to establish probable cause to search his cell phone.  (Scarlett Br. at 14.)  The court disagrees and finds that Special Agent Ando's affidavit contained ample support for Magistrate Judge Pohorelsky's conclusion that there was probable cause to search Subject Telephone 11.

First, Scarlett incorrectly asserts that Special Agent Ando's affidavit contained only "two boilerplate paragraphs" to support Judge Pohorelsky's finding of probable cause.  (*See id.*) To the contrary, Special Agent Ando's affidavit outlined the

circumstances leading up to and surrounding Scarlett's arrest. The affidavit described in detail the year-long investigation conducted by the DEA and the Postal Inspectors into a drug distribution organization allegedly led by Barret; the execution of a search warrant at the Barret Residence on October 7, 2010, during which agents saw in plain view open boxes containing large quantities of marijuana, and a loaded firearm; and the circumstances of Scarlett's arrest, which immediately followed his attempted flight from the Barret Residence when police arrived. (Ando Aff. at 8-20.)

In addition, in paragraphs 45 and 46 of her supporting affidavit--which Scarlett characterizes as "two boilerplate paragraphs" with "absolutely no specifics" related to the case or Scarlett (see Scarlett Br. at 14)--Special Agent Ando states that (1) cell phones are capable of electronically storing numerous types of information; and (2) in her experience, individuals involved in narcotics trafficking typically use cellular phones to communicate and store information and other records on their phones. (Ando Aff. at 25-26.)

In *United States v. Lam*, No. 05-CR-104S(F), 2006 WL 2864019 (W.D.N.Y. May 23, 2006) (Report and Recommendation), *adopted sub nom. United States v. Tran*, No. 05-CR-104S, 2006 WL 2884144 (W.D.N.Y. Oct. 4, 2006), a defendant whose cellular phone was (a) seized during his warrantless arrest and (b) later

searched pursuant to a warrant, moved to suppress evidence from
the phone on grounds that there was insufficient probable cause
to support issuance of the search warrant. *Id*. at *5. There,
as here, a government agent "recited the events leading to
[defendant] Tran's arrest and stated his belief, based on his
experience as a narcotics investigator, that drug traffickers
frequently store relevant information in their cellular phones."
*Id*. The court noted that "the experience of narcotics
investigators has been accepted as the basis to support such
cell phone searches." *Id*. (citing *United States v. Gaskin*, 364
F.3d 438, 457–58 (2d Cir. 2004)). In finding that the search
warrant was supported by probable cause, the court also pointed
out that the agent's experience with the use of cell phones was
not the only information upon which the warrant was issued; the
judge who issued the warrant had also been given a "thorough
recounting of the entire investigatory scenario leading to
Defendants' arrests." *Id*.

Similarly, here, the court finds that based on Special
Agent Ando's affidavit, which (a) outlined the circumstances
leading to Scarlett's arrest--including his attempt to flee from
a house to which large quantities of marijuana had just been
delivered--and (b) set forth the basis for Special Agent Ando's
belief that the phone recovered from Scarlett at the time of his
arrest contained evidence of a crime, there was ample support

for Magistrate Judge Pohorelsky's practical, common-sense determination that there was probable cause to believe that evidence of a crime would be found on Subject Telephone 11. Accordingly, the court denies Scarlett's motion to suppress evidence from Subject Telephone 11.

## VIII. Motion to Strike Aliases from the Superseding Indictment

Barret moves pursuant to Federal Rule of Criminal Procedure 7(d) and the Fifth Amendment of the Constitution to strike his five aliases[24] from the caption and body of the Superseding Indictment, on grounds that such aliases are inflammatory and constitute "highly prejudicial surplusage" that would deprive Barret of his right to a fair trial.[25] (Barret Br. at 1-2.) The government argues in opposition that it needs to use Barret's aliases to identify him at trial because many of Barret's co-conspirators and witnesses for the government know Barret only by his nicknames, specifically "Mouthy," "The General" and "Derrick Brown." (Gov't Opp'n at 43-44.)

---

[24] "Derrick Brown," "Sean Brown," "Mouthy," "The General" and "Solo."
[25] Barret's memorandum of law in support of his motion is internally inconsistent. In the first paragraph, Barret moves for the court to strike all five aliases from the indictment. (*See* Barret Br. at 1.) In the next paragraph, however, Barret lists only "Sean Brown," "Mouthy," "The General" and "Solo" as allegedly prejudicial surplusage. (*Id.*) Nevertheless, the court will construe Barret's motion as one to strike all five aliases.

## A. Legal Standard

Under Federal Rule of Criminal Procedure 7(d), the
court may strike surplusage from an indictment upon defendant's
motion.  Fed. R. Crim. P. 7(d).  The Second Circuit has held,
however, that district courts should not grant motions to strike
surplusage unless "the challenged allegations are not relevant
to the crime charged and are inflammatory and prejudicial."
*United States v. Mulder,* 273 F.3d 91, 99 (2d Cir. 2001) (quoting
*United States v. Scarpa,* 913 F.2d 933, 1013 (2d Cir. 1990)).
Moreover, "even language deemed prejudicial should not be
stricken if evidence of the allegation is admissible and
relevant to the charge."  *United States v. Rivera*, No. 09-CR-
619, 2010 WL 1438787, at *5 (E.D.N.Y. Apr. 7, 2010) (citing
*Scarpa*, 913 F.2d at 1013).  "Given this exacting standard, such
motions [to strike] are rarely granted."  *Id.* (quoting *United
States v. Coffey,* 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005)).

In *United States v. Peterson*, 168 F. Supp. 2d 51
(E.D.N.Y. 2001), another court in this district denied a
defendant's motion to strike his alias from the indictment
because the alias was relevant in light of the government's
representation that the alias would comprise part of its proof
at trial.  *Id.* at 56.  Similarly, in *United States v. Rucker*, 32
F. Supp. 2d 545 (E.D.N.Y. 1999), yet another a court in this
district held that "[r]eference to a defendant by his name and

alias is permissible if the government intends to offer evidence
of that alias as being necessary to identify the defendant in
connection with the crimes charged." *Id*. at 560.  Here, the
government contends that use of Barret's aliases is necessary to
identify Barret at trial.  (Gov't Opp'n at 43.)  Consequently,
the court finds that the aliases are relevant.

In addition, the court does not find that defendant's
aliases are inflammatory or prejudicial.  Barret's aliases are
innocuous, unlike nicknames such as "Frankie the Beast" or
Carmine "The Snake," which a trial court deemed prejudicial in
*United States v. Persico*, 621 F. Supp. 842, 860 (S.D.N.Y. 1985).
Moreover, even if the court did find Barret's aliases to be
prejudicial in themselves, the court would still deny Barret's
motion to strike the aliases from the indictment because the
aliases are relevant.  *See Rucker*, 32 F. Supp. 2d at 560 (noting
that the prejudicial nature of an alias is "not fatal if [the
alias] will be admissible as part of the government's proof at
trial"); *see also Persico*, 621 F. Supp. at 861 ("Even if
prejudicial, however, aliases and nicknames are proper in an
indictment where they will be part of the government's proof at
trial.").

Accordingly, the court denies without prejudice
Barret's motion to strike his aliases from the indictment as
surplusage.  Barret may renew the motion after the government

presents its case at trial. *See Peterson*, 168 F. Supp. 2d at 56

(allowing renewal of motion to strike if the government failed

to offer at trial proof of the alias as tending to identify

defendant and connecting him to the acts charged in the

indictment); *Persico*, 621 F. Supp. at 861 (denying motion to

strike aliases from indictment without prejudice, with right to

renew after close of government's case).

IX. **Motion for Dismissal of Indictment and Motion for *Massiah* (*Cardona*) Hearing[26]**

Barret moves to dismiss the Superseding Indictment on

grounds that it is insufficient on its face, that "there was no

basis for Mr. Barret's arrest," and on the theory that the

government has destroyed certain surveillance images created

during the three-month period between July and September 2010.

(Barret Br. at 19-21, 24.)  In connection with these motions,

Barret also moves for a *Massiah* hearing to address his suspicion

that the government may have improperly attempted to use "in-

---

[26] Barret requests a "*Cardona* hearing" to test the admissibility of statements that may have been made by an indicted co-defendant to an individual who may have been acting as an agent on behalf of the government. (Barret Br. at 20.)  A *Cardona* hearing is the functional equivalent of a *Massiah* hearing, during which the court determines, pursuant to *Massiah v. United States,* 377 U.S. 201 (1964), whether one's Sixth Amendment right to counsel has been violated because a private individual acting as a government agent deliberately elicited incriminating statements from an accused defendant in the absence of his counsel.  *United States v. Miller*, 116 F.3d 641, 665 (2d Cir. 1997).  *Cardona* hearings are used in New York State criminal proceedings, whereas the proper term is "*Massiah* hearing" in federal court. *Fox v. Bezio*, No. 10-CV-2986, 2011 WL 837158, at *3 n.5 (E.D.N.Y. Mar. 7, 2011); *see, e.g.*, *United States v. Yousef*, 327 F.3d 56, 173 (2d Cir. 2003). Consequently, the court will refer to the hearing Barret requests by its proper name throughout the remainder of this Memorandum and Order.

jail conversations" of Barret's co-defendants to obtain
additional evidence against him. (*Id.* at 20.)

The government argues that the indictment is facially
sufficient because it tracks the language of the statute.
(Gov't Opp'n at 45–47.) The government also argues that
Barret's allegations about the government's destruction of
surveillance images are meritless and that he has not availed
himself of the government's numerous offers to perform forensic
analysis on the footage. (*Id.* at 47.) The government did not
address Barret's motion for a *Massiah* hearing.

## A. Motion to Dismiss the Indictment

### 1. Sufficiency of the Indictment

#### a. Legal Standard

Pursuant to Federal Rule of Criminal Procedure
7(c)(1), an indictment must include "a plain, concise, and
definite written statement of the essential facts constituting
the offense charged." Fed. R. Crim. P. 7(c)(1). The indictment
"must sufficiently inform the defendant of the charges against
him and provide enough detail so that he may plead double
jeopardy in a future prosecution based on the same set of
events." *United States v. De La Pava*, 268 F.3d 157, 162 (2d
Cir. 2001). Moreover, to survive a motion to dismiss, "'an
indictment need do little more than to track the language of the
statute charged and state the time and place (in approximate

terms) of the alleged crime.'" *United States v. Yannotti*, 541
F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Alfonso,*
143 F.3d 772, 776 (2d Cir. 1998)); *see also United States v.*
*Kalish*, 403 F. App'x 541, 544, (2d Cir. 2010) ("[A]n indictment
'need only track the language of the statute and, if necessary
to apprise the defendant of the nature of the accusation against
him, state time and place in approximate terms.'") (quoting
*United States v. Frias,* 521 F.3d 229, 235 (2d Cir. 2008)).

### b. Application

         In light of the foregoing legal standards, the absence
of particulars such as "a specific time," "exact locations," or
"a description of Mr. Barret's participation" in the Superseding
Indictment (*see* Barret Br. at 20) does not render it legally
insufficient.  In *United States v. Faison*, 393 F. App'x 754 (2d
Cir. 2010), the Second Circuit affirmed a district court's
finding that an indictment was sufficient because it "track[ed]
the language of [21 U.S.C. §§ 846 and 841(a)(1)], specif[ied] .
. . the approximate time and location of the alleged crime . . .
[and] stated adequately the object of the conspiracy--possessing
cocaine with intent to distribute it."  *Id*. at 757 (internal
quotation marks omitted).  Likewise, the court finds here that
Counts One, Two and Three in the Superseding Indictment state
all elements of each crime charged by tracking the language of

21 U.S.C. §§ 846 and 841(b)(1)(A)(vii); 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vii); and 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

Moreover, Barret's argument that reference in the Superseding Indictment to his criminal activity, "together with others" should be stricken for lack of specificity (*see* Barret Br. at 20) lacks merit. In *United States v. Hill*, 279 F. App'x 90 (2d Cir. 2008), the Second Circuit upheld the use of the phrase "together with others" in an indictment, finding that the phrase, in combination with a citation to 18 U.S.C. § 2, comprised sufficient notice to a defendant that he faced liability under an aiding-and-abetting theory. *Id*. at 94–95. Accordingly, the court denies Barret's motion to dismiss the Superseding Indictment on grounds of insufficiency.[27]

## 2. Alleged Destruction of Evidence

Barret also moves to dismiss the Superseding Indictment on the speculative ground that "the government *may have* destroyed the September, August and July 2010 images." (Barret Br. at 24 (emphasis added).) Barret claims that if the

---

[27] Because the court finds that the indictment is valid on its face, the court need not address defendant's claims that "there was no basis for Mr. Barret's arrest" and that "[t]he case against Mr. Barret is based on hearsay, uncorroborated evidence, and unsupported allegations" (*see* Barret Br. at 19–20). *See United States v. Fleurissaint*, No. 03 CR 906, 2004 WL 2101922, at *2 (S.D.N.Y. Sept. 21, 2004) ("A court may not . . . dismiss an indictment because it is not 'supported by adequate or competent evidence.'") (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)); *see also Costello*, 350 U.S. at 363 ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits.").

images were destroyed, the court would have a basis to dismiss the indictment because the defendant would be at a "decided disadvantage." (*Id.*) In opposition, the government represents that it has "repeatedly invited defense counsel to review the original video surveillance evidence and to perform its forensic analysis" to determine whether the government in fact tampered with the evidence. (Gov't Opp'n at 47.)

### a. Legal Standard

A defendant must meet three requirements to prove that the government's destruction of evidence amounts to a violation of his due process rights warranting dismissal of an indictment: "(1) the government must have acted in bad faith in destroying the evidence; (2) the evidence must . . . possess an exculpatory value that was apparent before [it] was destroyed; and (3) the defendant must be unable to obtain comparable evidence by other reasonably available means." *United States v. Tyree*, 279 F. App'x. 31, 33 (2d Cir. 2008) (internal citations and quotation marks omitted).

### b. Application

Defendant fails to meet all three of these requirements. He does not offer a single fact to support a finding of bad faith or establish the exculpatory value of the allegedly destroyed evidence, and he offers nothing more than a bald assertion that he would be unable to obtain comparable

evidence if the surveillance tapes were destroyed. (*See* Barret
Br. at 24.) Indeed, Barret acknowledges that he does not even
know whether such destruction has occurred. (*Id.*) Accordingly,
the court denies Barret's baseless motion to dismiss the
indictment.

### B. Motion for *Massiah* Hearing

#### 1. Legal Standard

"It is well settled that the Sixth Amendment right to
counsel is violated when a private individual, acting as a
government agent, 'deliberately elicit[s]' incriminating
statements from an accused in the absence of his counsel."
*Miller*, 116 F.3d at 665 (quoting *Massiah*, 377 U.S. at 206). A
defendant is not automatically entitled to an evidentiary
*Massiah* hearing simply because he asserts that a *Massiah*
violation has occurred, however. *Miller*, 116 F.3d at 665.
Rather, in order to require a hearing on such a claim, "the
defendant bears the burden of alleging specific facts"
indicating the existence of such a violation. *United States v.
Aulicino*, 44 F.3d 1102, 1117 (2d Cir. 1995) (internal citation
and quotation marks omitted).

#### 2. Application

Here, Barret has failed to allege *any* specific facts
to support his request for a *Massiah* hearing. Far from
submitting concrete factual allegations, he states only his

suspicion that "the government *may* attempt" to improperly elicit information from his co-defendants (*see* Barret Br. at 20) (emphasis added). Accordingly, because Barret's motion is baseless, the court denies his motion for a *Massiah* hearing.

## X. Motion for Hearing Concerning Authenticity, Audibility and Visual Clarity of Recorded Materials

Barret moves for a hearing to address concerns regarding the "authenticity, audibility and/or visual clarity of recorded materials" provided by the government during discovery. (Barret Br. at 28.) The government opposes Barret's motion because Barret has not specified which recordings give rise to these concerns or the precise nature of his concerns, and he has not set forth a basis to challenge the authenticity of the recordings. (Gov't Opp'n at 48.) The government also opposes Barret's motion as premature because the government has not yet identified the recordings that it plans to offer into evidence at trial. (*Id.*)

Defendant has not identified the recordings that give rise to his motion. Moreover, the court agrees with the government that defendant's request is premature because the government has not yet determined which recordings--if any--it intends to introduce at trial. *See United States v. Koschtschuk*, No. 09-CR-0096, 2010 WL 584018, at *9 (W.D.N.Y. Feb. 16, 2010) (denying without prejudice defendant's motion for

audibility hearing as premature because government had not yet decided which recordings it intended to introduce at trial); *United States v. Columbo*, No. 04 CR. 273, 2006 WL 2012511, at *14 (S.D.N.Y. July 18, 2006) (denying without prejudice defendant's motion for audibility hearing and instructing defendant to identify and bring to the court's attention "specific audibility issues" as soon as the government designated the tapes it intended to use at trial).

For the same reasons, the court finds that issues of authenticity and visual clarity ought to be resolved together with any issues of audibility when the government determines which recordings it intends to introduce into evidence at trial. Per the Pre-Trial Scheduling Order that governs this case, the parties shall exchange and file their list of exhibits no later than December 9, 2011. (*See* ECF No. 252, Criminal Pre-Trial Scheduling Order, at 1.) At that time, Barret may raise specific audibility, visual clarity or authenticity issues, and the bases for such concerns, and renew his motion. Accordingly, Barret's motion for a hearing concerning the authenticity, audibility and visual clarity of recorded materials is denied without prejudice.

## XI.  Motion to Compel Rule 16 Discovery and to Isolate Surveillance Evidence

Barret moves pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16") for an order compelling the government to provide all outstanding discovery and evidence.  (Barret Br. at 2–4.)  In addition, Barret moves for an order directing the government to isolate from a total of approximately 1700 hours of video surveillance images the "precise dates and times of all pertinent images the Government intends to offer at trial." (*Id.* at 2.)

The government argues that Barret's motion for Rule 16 discovery is moot because the government has already "fully complied with and will continue to comply with" its discovery disclosure obligations under Rule 16.  (Gov't Opp'n at 49–50.) In addition, the government opposes Barret's motion for an order compelling the government to identify the portions of video surveillance images to be used during the government's case-in-chief.  (*Id.* at 49.)

### A. Rule 16 Discovery

The court agrees with the government that an order compelling the government to comply with its Rule 16 obligations is unnecessary.  Since December 3, 2010, the government has made numerous Rule 16 disclosures (*see* ECF Nos. 219, 234–37, 255, and 274), which lends substantial support to the government's

representation that it has "fully complied with and will continue to comply with" its Rule 16 obligations.  Accordingly, the court denies as moot Barret's motion to compel production of evidence pursuant to Rule 16.

### B. Order Directing the Government to Isolate Video Surveillance Images

#### 1. Legal Standard

Among other things, Rule 16(a)(1)(E) requires the government to furnish to the defendant, upon request, three categories of documents and data in its possession prior to trial:  (1) "material to preparing the defense," (2) that the Government intends to use as evidence in its case-in-chief at trial, and (3) that was "obtained from or belongs to the defendant."  Fed. R Crim. P. 16(a)(1)(E).  It is well-settled, however, that "Rule 16(a)(1)(e) 'does not *require* the Government to identify specifically which documents it intends to use as evidence.'"  *United States v. Vilar*, 530 F. Supp. 2d 616, 636 (S.D.N.Y. 2008) (quoting *United States v. Carrington*, No. 02 CR 897, 2002 WL 31496199, at *2 (S.D.N.Y. Nov. 7, 2002)).  Rather, the rule "merely requires that the Government produce documents falling into the three enumerated categories."  *Id*. (quoting *Carrington*, 2002 WL 31496199, at *2).

In *United States v. Kaur*, No. 08-CR-428, 2009 WL 1296612 (E.D.N.Y. May 7, 2009), the government made

approximately 1,000 hours of surveillance footage available to the defendant before trial, pursuant to Rule 16(a)(1)(E), then used a clip from that footage at trial. *Id.* at *8. Defendant claimed that because the government had not identified and isolated the clip prior to trial, the government had "failed to disclose the evidence within the meaning of Rule 16(a)(1)(E)" and that he was "bound within voluminous amounts of other material produced just in advance of trial." *Id.* This court disagreed, finding that Rule 16 did not obligate the government to separately identify and isolate the video clip from the footage it produced to the defendant. *Id.* Furthermore, this court noted that the government's production of the video was timely submitted according to a schedule to which the defendant agreed. *Id.* at *9.

### 2. Application

Here, the court likewise finds that the government is not obliged under Rule 16 to identify or isolate the specific clips it intends to use during its case-in-chief. *See United States v. Galestro*, No. 06-CR-285, 2008 WL 2783360, at *19 (E.D.N.Y. July 15, 2008) (noting that the "prosecution [does] not have any obligation under Rule 16 of the Federal Rules of Criminal Procedure to identify the specific recordings it intends to use as evidence"). The government timely produced its pole camera recordings to Barret more than eleven months ago

71

(*see* ECF No. 234, Gov't Letter dated 12/3/2010; Gov't Opp'n at 49), and the government produced surveillance from Barret's home security system on August 9, 2011 (*see* ECF No. 219, Gov't Letter dated 8/9/2011; Gov't Opp'n at 49), providing ample opportunity for him to review the footage in preparation for his defense. Moreover, the government recently provided defense counsel with the dates of the recordings it intends to use at trial. (*See* ECF No. 286, Gov't Letter dated 11/9/2011.) In addition, during the November 10, 2011 status conference, the court ordered the government to identify with more specificity the timeframes of video evidence it intends to use during its case-in-chief, by December 27, 2011. (*See* Minute Entry dated 11/10/2011.) Accordingly, Barret's motion for an order directing the government to isolate the "precise . . . times of all pertinent images the Government intends to offer at trial" is denied as moot.

### XII. Motion to Compel Immediate Production of *Brady* and *Giglio* Material

Barret moves for an order compelling the government to disclose all exculpatory material and information in its possession that falls within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963). (Barret Br. at 5–12.) Barret also moves for an order to compel the government's immediate production of impeachment material pursuant to *Giglio v. United States*, 405

U.S. 150 (1972).  (*Id.* at 10–12.)  In opposition, the government

acknowledges and affirms its obligation to produce *Brady*

material; represents that it is presently unaware of any such

material; and confirms that it will "immediately produce such

material should any be discovered." (Gov't Opp'n at 51.)  The

government also argues that the court's intervention is

unnecessary because it intends to produce the *Giglio* material at

the same time it produces Jencks Act material.[28]  (*Id.* at 52

(citing *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir.

2001)).)

### A. Legal Standard

"Under *Brady* and its progeny, 'the Government has a

constitutional duty to disclose favorable evidence to the

accused where such evidence is 'material' either to guilt or to

punishment.'" *United States v. Paulino,* 445 F.3d 211, 224 (2d

Cir. 2006) (quoting *Jackson*, 345 F.3d at 70).  "Favorable

evidence" that must be disclosed for purposes of *Brady* "includes

not only evidence that tends to exculpate the accused, but also

evidence that is useful to impeach the credibility of a

government witness," also known as "*Giglio* material." *Coppa*,

267 F.3d at 139 (citing *Giglio*, 405 U.S. at 154).  "[A]

---

[28] The government initially intended to produce Jencks Act material one week before trial (*see id.* at 57), but agreed during the November 10, 2011 status conference to provide the Jencks Act material by December 27, 2011 (*see* Minute Entry dated 11/10/2011).

prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." *Coppa*, 267 F.3d at 142.

It is well-settled that the government need not immediately disclose *Brady* or *Giglio* material simply upon request by the defendant. *Id.* at 146. Rather, the government must disclose all *Brady* and *Giglio* material "in time for its effective use at trial." *Id.* Because the period of time that satisfies that requirement depends on the materiality of the evidence and the particular circumstances of each case, *id.* at 146, the Second Circuit "has declined to specify a precise meaning for the phrase 'in time for effective use.'" *United States v. Saliba*, No. 08-CR-792, 2010 WL 680986, at *4 (E.D.N.Y. Feb. 24, 2010) (citing *United States v. Rodriguez*, 496 F.3d 221, 227-28 (2d Cir. 2007)).

The Second Circuit has noted that "disclosure in advance of trial can be advantageous," particularly if the material warrants additional investigation by the defense. *Rodriguez*, 496 F.3d at 228 n.6. In other cases, however, "mid-trial disclosure may be adequate where defense counsel, before the start of cross-examination, is given the opportunity to cross-examine the witness outside the presence of the jury." *Id.* Notably, "there is no pre-trial discovery right to *Giglio*

materials." *United States v. RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 179 (E.D.N.Y. 2004) (citing *United States v. Nixon,* 418 U.S. 683, 701 (1974)). "A district court has the discretion to order *Brady/Giglio* disclosure at any time as a matter of sound case management." *Saliba*, 2010 WL 680986, at *4 (internal quotation marks omitted).

### B. Application

Here, the government has represented to the court that it is aware of its obligations under *Brady*; that it is unaware of any *Brady* material currently in its possession; and that if it becomes aware of any such material, it will immediately produce the material. (*See* Gov't Opp'n at 51.) These representations are sufficient to satisfy the court unless and until a defendant gives the court reason to believe that the government is not complying with its *Brady* obligations. *RW Prof'l Leasing Servs*., 317 F. Supp. 2d at 179; *see United States v. King*, No. 10 CR 122, 2011 WL 1630676, at *7 (S.D.N.Y. Apr. 27, 2011) (denying motion to compel *Brady* material, finding sufficient government's affirmation of its continuing disclosure obligations under *Brady*, and its promise to promptly disclose any such material upon discovery).

With respect to the *Giglio* material, the government indicates that it intends to "adhere to its customary practice of producing any such material at the same time it produces

Jencks Act material," one week before trial. (Gov't Opp'n at 52–53, 56.) The court in its discretion denies the motion for immediate disclosure of *Giglio* material at this time. *See Saliba*, 2010 WL 680986, at *4 (denying motion to compel immediate disclosure of *Giglio* material for trial "[g]iven that the trial is over a month away" and in light of the government's intention to disclose the material shortly before trial). Nevertheless, because early disclosure of *Giglio* material will aid the court as late disclosure has great potential to disrupt the flow of trial, *see United States v. Bronson*, No. 05-CR-714, 2007 WL 2455138, at *14 (E.D.N.Y. Aug. 23, 2007), the court directs the government to disclose this material to defendants by December 27, 2011.

## XIII. Motion to Compel Early Disclosure of Jencks Act Material

Barret moves for an order compelling the government to disclose material pursuant to the Jencks Act, 18 U.S.C. § 3500, in advance of trial. (Barret Br. at 26–27.) The government opposes Barret's motion, contending that the Jencks Act itself prohibits the court from compelling its early disclosure of material pursuant to the statute. (Gov't Opp'n at 54.)

The Jencks Act, codified at 18 U.S.C. § 3500, provides in relevant part that:

> In any criminal prosecution brought by the
> United States, no statement or report in the

> possession of the United States which was
> made by a Government witness or prospective
> Government witness (other than the
> defendant) shall be the subject of subpoena,
> discovery, or inspection until said witness
> has testified on direct examination in the
> trial of the case.

18 U.S.C. § 3500(a). Therefore, the statute "deprives the District Courts of the power to mandate early production of such material." *United States v. Seabrook*, No. 10 Cr. 87, 2010 WL 5174353, at *3 (S.D.N.Y. Dec. 14, 2010); *see Coppa*, 267 F.3d at 146 (finding district court exceeded its authority in ordering pre-trial disclosure of Jencks material because the Jencks Act constrained the court's power to issue any such order); *United States v. Souza*, No. 06-CR-806, 2008 WL 753736, at *15 (E.D.N.Y. Mar. 19, 2008) (denying motion because the court lacked authority to order pretrial disclosure of Jencks material). During the November 10, 2011 status conference, however, the government agreed to produce all Jencks Act material by December 27, 2011. (*See* Minute Entry dated 11/10/2011.) Accordingly, Barret's motion for early disclosure of Jencks Act material is denied as moot.

## XIV. Motion to Compel Early Disclosure of Government's Witness List

Barret moves for an order compelling the disclosure of a list of the government's anticipated trial witnesses. (Barret Br. at 26.) The government argues that Barret's motion should

be denied because he has failed to allege a particularized need for such disclosure, as required in this Circuit.  (Gov't Opp'n at 58-59.)

### A. Legal Standard

"[T]he prosecution has no general duty to disclose the identity of its witnesses who will testify against defendants in advance of trial," nor does Federal Rule of Civil Procedure 16 require the government to provide a list of its anticipated witnesses prior to trial.  *United States v. Rivera*, 2010 WL 1438787, at *4.  Nevertheless, "the court may order the disclosure when a balancing of the defendants' need for disclosure and the Government's need for concealment indicates that such an order would be in the interests of justice." *Biaggi*, 675 F. Supp. at 810-11 (citing *United States v. Cannone*, 528 F.2d 296, 301-02 (2d Cir. 1975); *see also United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990) (noting district courts have authority to compel pre-trial disclosure of identities of witnesses).

The court need not grant the defendant's motion absent some specific showing that "disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case," however.  *Id.* at 139-40; *see also Biaggi*, 675 F. Supp. at 810-11 (discretion to compel pre-trial disclosure of government witness list "should be

exercised only when the defense makes a *specific* showing of need"). An "abstract conclusory claim [by defendant] that . . . disclosure [is] necessary to its proper preparation for trial" does not suffice. *Cannone*, 528 F.2d at 301–02.

## B. Application

Here, Barret has not specified why his need for disclosure of the government's witness list outweighs the government's need to await a time closer to trial. Nor has he alleged that the list is material to his preparation of a defense and reasonable under the present circumstances. Indeed, Barret has made no showing of need at all. Consequently, the court denies Barret's motion to compel the government's disclosure of its witness list. *See United States v. Vondette*, 248 F. Supp. 2d 149, 156–57 (E.D.N.Y. 2001) (denying motion to compel pre-trial disclosure of government witness list because defendant did not make specific showing of need); *see also Rivera*, 2010 WL 1438787, at *4 (same); *Ojeikere*, 299 F. Supp. 2d at 258 (same). Each party shall disclose its witness list by December 9, 2011, per the previously issued Pre-Trial Scheduling Order. (*See* ECF No. 252, Criminal Pre-Trial Scheduling Order, at 1–2.)

## XV.   Motion to Preserve Rough Notes Taken as Part of the Investigation

Barret moves for an order requiring all government agents and officers who participated in the investigation to retain and preserve all contemporaneous rough notes taken as part of their investigation of the instant case.  (Barret Br. at 26-27.)   The government did not oppose this motion.

### A. Legal Standard

Government agents need not preserve rough notes if they incorporate the notes into formal reports.  *United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988); *see United States v. Barlin*, 686 F.2d 81, 92 (2d Cir. 1982) (finding that because agent's notes were fully incorporated into his formal report, "the notes need not have been preserved and their destruction violated no Jencks Act right").  Nevertheless, defendant "may be entitled to production of at least a portion of the notes at trial if they were still in existence at the time of trial and were discoverable under the provisions of the Jencks Act." *United States v. Bosch*, 385 F. Supp. 2d 387, 390 (S.D.N.Y. 2005); *see also* 18 U.S.C. § 3500(e)(2) (defining potentially discoverable "statement" as including "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral

statement made by said witness and recorded contemporaneously with the making of such oral statement").

### B. Application

The court grants Barret's motion and orders the government to preserve all rough notes taken as part of the investigation of the instant case that (a) currently exist at the time of this order, or (b) are created afterwards. *See Bosch*, 385 F. Supp. 2d at 390 (granting pre-trial motion for preservation of all "rough notes taken as part of the investigation of the defendants in existence at the time of this order, or created afterwards"); *see also United States v. Urso*, 369 F. Supp. 2d 254, 274 (E.D.N.Y. 2005) (issuing pre-trial order compelling government to preserve rough notes as "a prophylactic order").

### XVI. Motion to Compel Pre-Trial Disclosure of Rule 404(b) Material

Barret moves for an order compelling the government to produce in advance of trial all evidence it will seek to introduce pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"). (Barret Br. at 25.) In opposition, the government characterizes Barret's motion as one requesting "early disclosure," and proposes that the court permit the government to file its Rule 404(b) notice no later than two weeks before trial. (Gov't Opp'n at 60-61.)

## A. Legal Standard

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," and that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). The Federal Rules of Evidence do not define the timeframe that constitutes "reasonable notice in advance of trial," however.

As the government notes, courts in the Second Circuit "have generally interpreted 'reasonable notice' to be ten days to two weeks before trial." *United States v. James*, No. 02 CV 0778, 2007 WL 914242, at *8 (E.D.N.Y. Mar. 21, 2007) (Report and Recommendation), *adopted and aff'd*, *id.* at *2; *see also United States v. Kyongja Kang*, No. 04 CR 87, 2006 WL 208882, at *7 (E.D.N.Y. Jan. 25, 2006) (directing government to provide notice of 404(b) evidence one week prior to trial to satisfy "reasonable notice" requirement); *United States v. Aparo*, 221 F. Supp. 2d 359, 366 (E.D.N.Y. 2002) (granting defendants' pre-trial motion for Rule 404(b) notice "insofar as it directs the government to provide the defendants with notice of the 404(b)

evidence it proposes to offer at trial two weeks prior thereto").

## B. Application

During the November 10, 2011 status conference, the court directed the government to file its Rule 404(b) motions by November 21, 2011.  (*See* Minute Entry dated 11/10/2011.) Accordingly, the motion to compel early disclosure of Rule 404(b) evidence is denied as moot.

## XVII.  Motion to Compel Government's Disclosure of "All Items Intended by the Government to be Introduced Into Evidence"

Barret moves for an order compelling the government to produce "a list of all items intended by the government to be introduced into evidence," purportedly "to provide counsel an opportunity for review" and "to assist this court in reaching an early determination of admissibility [of the evidence] pursuant to [Federal Rule of Evidence 104]."  (Barret Br. at 27.)  The government did not oppose this motion.  Because the government did oppose defendant's motions for early disclosure of Jencks material (*see* Gov't Opp'n at 54–57); Brady material (*see id.* at 51); *Giglio* material (*see id.* at 52–53); and Rule 404(b) material (*see id.* at 60–61), all of which are encompassed in the instant motion, the court presumes that the government also opposes this motion.

"[T]he Government is not required to disclose all of its evidence to the defense before trial." *Vargo v. United States*, No. 06-CV-4846, 2008 WL 2437861, at *7 (E.D.N.Y. June 13, 2008) (citing Mehler *et al., Federal Criminal Practice: A Second Circuit Handbook* §§ 14-2, 14-3, 14-4 (2006 ed.)). Accordingly, the court denies defendant's overbroad request for pre-trial disclosure of evidence, *see Ojeikere*, 299 F. Supp. 2d at 257 (denying defendant's pre-trial motion for "disclosure of all evidence the prosecution intends to use"), but, as noted above, has already set dates for specific disclosures and motions pursuant to Federal Rule of Evidence 404(b).

## XVIII. Motion for Extension of Time to File Motion to Suppress

During a status conference on September 14, 2011, the court ordered defendants to file all of their pre-trial motions by September 23, 2011. (*See* Minute Entry dated 9/14/2011.) Later that day, the court issued a pre-trial scheduling order, again directing all defendants to "SERVE and FILE all of defendants' pre-trial motions" by September 23, 2011. (*See* Pre-Trial Scheduling Order at ¶ 3.) Manning and Anderson include motions to suppress evidence in their timely filed pre-trial motions. (*See* Anderson Br. at 12–13; Manning Br. at 2–4.) Barret, however, moves for an extension of time for filing his motion to suppress. (Barret Br. at 17, 19.) Barret contends

that he cannot move to suppress evidence before the court grants
his motion for an order compelling the government to specify
which evidence it intends to introduce during its case-in-chief
at trial. (*Id.* at 17.) The government opposes Barret's motion
on grounds that he is not entitled to a list of "specific
evidence" that the government intends to use during its case-in-
chief and that Barret has disregarded the court's briefing
schedule for the pre-trial motions. (Gov't Opp'n at 62.)

### A. Motion To Compel the Government to Specify Evidence It Intends to Introduce at Trial

#### 1. Legal Standard

Barret supports his motion with reference to "Fed R.
Crim. P. 12(d)(2)," which he claims "provides a mechanism for
insuring that a defendant knows of the government's intention to
use evidence to which the defendant may want to object."
(Barret Br. at 17.) Federal Rule of Criminal Procedure 12(d)(2)
no longer exists, and the court construes Barret's motion as one
brought under Federal Rule of Criminal Procedure 12(b)(4)(B),
which provides that a defendant "may, in order to have an
opportunity to move to suppress evidence under Rule 12(b)(3)(C),
request notice of the government's intent to use (in its
evidence-in-chief at trial) any evidence that the defendant may
be entitled to discover under Rule 16." Fed. R. Crim. P.
12(b)(4)(B).

"Rule 12(b)(4)(B) is not designed or intended to be used to obtain more specific discovery than that provided by Rule 16," nor is it "designed to aid the defendant in ascertaining the Government's trial strategy." *Koschtschuk*, 2010 WL 584018, at *10 (citation and internal quotation marks omitted). Rather, "Rule 12(b)(4)(B) is intended to facilitate efficient suppression motion practice by allowing the defendant to avoid filing a motion to suppress when the Government does not intend to use the evidence at issue." *Id*. at *10.

## 2. Application

The court has reviewed the letters accompanying the government's Rule 16 disclosures to date. The court notes that the bulk of discovery was provided more than nine months ago, between December 2010 and February 2011, and that the evidence does not appear to be so overwhelming and voluminous as to preclude the opportunity for sufficient review. *See United States v. Swain*, No. S4 08 Cr. 1175, 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (denying Rule 12(b)(4)(B) motion in part because defendant had "sufficient time and information to determine whether to file a suppression motion" because he had been given over seventeen months to review the bulk of Rule 16 discovery material, which spanned over 13,000 pages).

Moreover, the court finds that the evidence provided through Rule 16 discovery appears to be sufficiently specific

such that any further specification of evidence the government intends to use at trial would require the government to reveal its trial strategy. *See Koschtschuk*, 2010 WL 584018, at *10 (denying Rule 12(b)(4)(B) motion because granting motion would "necessarily aid defendants in ascertaining the government's trial strategy" and the court found "no basis for the government to more specifically identify the evidence that it intends to use in its case in chief at trial"); *see also Vilar*, 530 F. Supp. 2d at 636 ("[I]t is well-settled that Rule 16(a)(1)(e) does not *require* the Government to identify specifically which documents it intends to use as evidence.") (internal quotation marks omitted). Accordingly, the court denies Barret's Rule 12(b)(4)(B) motion for an order compelling the government to specify which evidence it intends to introduce at trial.

### B. Motion for Extension of Time

"A party waives its ability to move to suppress evidence if it fails to do so by the pre-trial deadline set by the court, except that the district court may grant relief from that waiver "[f]or good cause." *United States v. Kopp*, 562 F.3d 141, 143 (2d Cir. 2009) (citing Fed. R. Crim. P. 12(e)). Here, Barret has not shown "good cause" for his failure to file any suppression motions prior to the court's deadline for submission of pre-trial motions. Nonetheless, during the November 10, 2011

status conference, the court granted Barret's motion for an extension of time to file his motions to suppress.

## XIX. Motion to Compel Early Disclosure of Co-Conspirator Statements

Barret moves for an order compelling the government to disclose (1) any co-conspirator statements it intends to offer at trial and (2) how the government intends to establish that each statement was made by a co-conspirator during the course of and in furtherance of the conspiracy. (Barret Br. at 29–30.) In opposition, the government argues that in the Second Circuit, early disclosure of co-conspirator statements is not necessary absent exceptional circumstances, and that Barret has "failed to demonstrate why receiving such material[] one week prior to trial would be insufficient." (Gov't Opp'n at 56–57.)

### A. Legal Standard

As an initial matter, "[s]tatements of non-testifying co-conspirators are not discoverable at all." *Rivera*, 2010 WL 1438787, at *5 n.2; *see also United States v. Yarborough*, No. 06-CR-190(A), 2007 WL 962926, at *16 (W.D.N.Y. Mar. 28, 2007) ("Statements of co-conspirators whom the Government does not intend to call as witnesses at trial are not discoverable, pursuant to established precedent within this circuit and the provisions of the Jencks Act.") (citing *In re United States*, 834 F.2d 283, 286 (2d Cir. 1987)).

88

Statements of testifying co-conspirators constitute Jencks Act material, which is discoverable only *after* the witness has testified on direct examination. *See* 18 U.S.C. § 3500; *see also* Fed. R. Crim. P. 16(a)(2) (discovery of statements made by prospective government witnesses not authorized "except as provided in 18 U.S.C. § 3500"). Thus, the Jencks Act prohibits this court from compelling the government's pretrial disclosure of testifying co-conspirators' statements. *Coppa,* 267 F.3d at 145; *see also In re United States*, 834 F.2d at 286 (finding that "[a] co-conspirator who testifies on behalf of the government is a witness under the [Jencks] Act," which "provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies").

**B. Application**

In light of the foregoing, Barret's motion for an order compelling the government to disclose any co-conspirator statements it intends to offer at trial is denied. *See Rivera*, 2010 WL 1438787, at *5 (denying motion to compel early disclosure of co-conspirator's statement); *see also United States v. Russo*, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007) (denying motion to compel government's identification of co-conspirator statements and the circumstances surrounding those statements because defendants had "identified no reason why the

normal process of disclosure through the ordinary course of discovery, rulings on admissibility through motions *in limine,* and objections during the course of trial" were inadequate). Consequently, Barret's motion for an order compelling the government to disclose how it intends to establish that each statement was made by a co-conspirator during the course of and in furtherance of the conspiracy is denied.

## XX. Motion to Suppress Manning's Post-Arrest Statements

Manning moves to suppress her post-arrest statements on grounds that officers lacked probable cause to effectuate the underlying arrest, making her statements inadmissible as "fruit of the poisonous tree." (Manning Br. at 1, 4; Manning Reply at 2-5, 7-8.) In opposition, the government argues that police officers had authority to temporarily detain Manning, an occupant of the home who was present at the time of the search, because they had lawfully executed a search warrant at the Barret Residence and, given the totality of the circumstances, the officers had probable cause to believe that Manning had committed or was committing an offense and to arrest her. (Gov't Opp'n at 27–30.)

### A. Legal Standard

"The Fourth Amendment right to be free from unreasonable seizures 'includes the right to be free from arrest absent probable cause.'" *Torraco v. Port Auth. of New York and*

*New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006)).  The Supreme Court "repeatedly has explained that 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Adams v. Williams*, 407 U.S. 143, 148 (1972); *Draper v. United States*, 358 U.S. 307, 313 (1959); *see also Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

Where police have probable cause to believe an individual has committed or is committing a crime, the police may arrest that individual without a warrant.  *Draper,* 358 U.S. at 310-11.  The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," without regard to "the officer's state of mind (except for the facts that he knows)." *Devenpeck v. Alford,* 543 U.S. 146, 152-153 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) and *Wren v. United States*, 517 U.S. 806, 812-13 (1996) (reviewing cases)).

**B. Application**

Manning argues that her warrantless arrest in her home was unsupported by probable cause. In the alternative, she argues that even if there was probable cause for her arrest, the police should have obtained a warrant because she was in her home at the time of the arrest. The court finds that Manning's arguments lack merit.

First, the court finds that there was probable cause to support Manning's arrest. When officers entered her home to execute a search warrant on October 7, 2010, they found in plain view the nine cardboard boxes that Barret and Wilson had unloaded into the home earlier in the day, and the officers found a green leafy substance in each box that subsequently tested positive for marijuana. (Compl. at ¶ 16.) The agents also saw brick-like bales of marijuana on the kitchen counter, a black garbage bag full of marijuana, heat-sealer machines, narcotics packaging materials consistent with those found during prior trash inspections, and a loaded, semi-automatic pistol on the living-room floor. (*Id.*) Furthermore, agents recovered a clear, plastic bag containing marijuana and several thousand dollars in United States currency from the bedroom that Barret and Manning shared. (*Id.*) The court finds that given these circumstances, a prudent person, or one of reasonable caution, would believe that Manning and others present in the house at

the time, committed or were in the process of committing a crime. Consequently, there was probable cause to support Manning's arrest.

Second, the court finds unavailing Manning's argument that, notwithstanding the existence of probable cause, an arrest inside her home was improper because officers did not first obtain an arrest warrant. In support of her argument, Manning erroneously relies on *Payton v. New York,* 445 U.S. 573 (1980), a case in which the Supreme Court held that "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576. *Payton* is inapposite here because officers had a warrant to enter Manning's home--a fact Manning concedes--and "*Payton* is primarily concerned with the 'unauthorized entry into a dwelling'--a concern that evaporates when the home entry is supported by a valid search warrant." *United States v. Bethea*, No. 1:07-CR-3, 2007 WL 3025042, at *3 (D. Vt. Oct. 12, 2007) (citing *United States v. Winchenbach*, 197 F.3d 548, 554 (1st Cir. 1999)).

In *United States v. Heath*, 455 F.3d 52 (2d Cir. 2006), the Second Circuit noted that officers who lawfully entered a home pursuant to a search warrant and observed bags of cocaine in plain view could reasonably have concluded that an occupant present in that home at the time had committed or was committing

a crime.  *Id*. at 57.  Consequently, where "there is no evidence
that any precautions were taken to prevent people in the house
from coming across the putatively visible contraband," the
Second Circuit went on to state, "reasonably cautious police
officers could have concluded that the home's adult occupants
were complicit in the illegal activities involving the
contraband" and "[i]t follows that the law enforcement officials
seemingly had a valid ground for arresting both of the adult
occupants of the . . . residence."  *Id*.; *see also United States
v. MacDonald*, 916 F.2d 766, 770 (2d Cir. 1990) (holding that
undercover agent's observation of cocaine and marijuana in plain
view throughout an apartment containing six men provided
probable cause for warrantless arrest of all six occupants).

The court finds that as in *Heath*, because officers
entered the Barret Residence under the authority of a search
warrant and discovered "putatively visible contraband," officers
did not need a warrant to lawfully arrest Manning in her home.
Accordingly, the court denies Manning's motion to suppress her
post-arrest statements on grounds that her arrest was unlawful.

## XXI. Motion for Leave to File Additional Motions

The movants request leave to file additional motions
as appropriate or as justice requires.  (*See* Forrest Mot. at
¶ 3; Anderson Br. at 25; Manning Br. at 1; Barret Br. at 30.)
The court denies without prejudice defendants' motion and will

94

allow further motions only for good cause shown. Given the approaching trial date and the court's expectation that all parties would abide by the briefing schedule it set for pre-trial motions, the court will reject any future motions if they rehash issues or are based on facts and legal arguments that could have been brought to the court's attention in the current motions.

## CONCLUSION

For the foregoing reasons, the court (1) grants to each movant leave to join in each other's motions; (2) denies the movants' motion for severance; (3) denies the motion for a bill of particulars; (4)(a) denies the motion to compel the immediate disclosure of identity and other information of any government informants and (b) denies the motion to compel the immediate disclosure of information related to unindicted co-conspirators; (5) denies the motion to dismiss the indictment on grounds that it impermissibly combines multiple crimes in one count of conspiracy; (6) denies the motion for release and review of the grand jury minutes; (7) denies the motion to suppress evidence from Subject Telephone 11; (8) denies without prejudice Barret's motion to strike his aliases from the indictment as surplusage; (9)(a) denies the motion to dismiss the Superseding Indictment on grounds of insufficiency, (b) denies the motion to dismiss the indictment based on alleged

destruction of evidence; and (c) denies the motion for a *Massiah* hearing; (10) denies without prejudice the motion for a hearing concerning the authenticity, audibility and visual clarity of recorded materials; (11)(a) denies as moot the motion to compel production of evidence pursuant to Rule 16 and (b) denies as moot the motion for an order directing the government to isolate the "precise . . . times of all pertinent images the Government intends to offer at trial"; (12)(a) denies the motion to compel immediate disclosure of *Brady* material, with leave to renew if a defendant gives the court reason to believe that the government is not complying with its obligations, and (b) denies the motion for immediate disclosure of *Giglio* material, but directs the government to disclose this material to defendants by December 27, 2011; (13) denies as moot the motion for early disclosure of Jencks Act material because the court has already ordered the government to produce this material by December 27, 2011; (14) denies the motion to compel the government's disclosure of a witness list; (15) grants the motion to compel the government to preserve all rough notes taken as part of the investigation of the instant case that (a) currently exist at the time of this order, or (b) are created afterwards; (16) denies Barret's motion to compel pre-trial production Rule 404(b) evidence as moot in light of the court's order that all parties shall submit Rule 404(b) motions by November 21, 2011; (17) denies the motion

for an order compelling the government to produce "a list of all items intended by the government to be introduced into evidence"; (18)(a) denies the Rule 12(b)(4)(B) motion for an order compelling the government to specify which evidence it intends to introduce at trial and (b) has granted the motion for an extension of time to file motions to suppress; (19)(a) denies the motion for an order compelling the government to disclose any co-conspirator statements it intends to offer at trial, and (b) denies the motion for an order compelling the government to disclose how it intends to establish that each statement was made by a co-conspirator during the course of and in furtherance of the conspiracy; (20) denies Manning's motion to suppress her post-arrest statements; and (21) denies without prejudice defendants' motion for leave to file additional motions as appropriate or as justice requires.

**SO ORDERED.**

Dated:     November 16, 2011
           Brooklyn, New York


                              _____/s/_____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York